## O'Donnell *versus* The Allegheny Valley Railroad Company.

1. When several persons are employed as workmen in the same general service, though in different parts of it and one of them is injured through the carelessness of another, the employer is not responsible unless he had employed unfit persons for the service.

2. Ryan *v.* The Pennsylvania Railroad Co., 11 Harris 384, remarked on.

3. A carpenter working as such for a railroad company, was carried on the company's cars to and from his work as part of his contract of hiring. He was not to be esteemed as employed in the same general service with the hands running the train or repairing the track of the road, so as to relieve the company from responsibility for injury to him from their negligence.

4. The master is bound to use ordinary care in providing suitable structure, machinery, tools, &c., and in selecting proper servants, and is liable to other servants in the same employment if they are injured by his own neglect of duty.

5. A railroad company is bound to furnish a safe and sufficient roadway to its servants as well as others travelling over it. The remote negligence of servants as to the roadway will not excuse the non-performance of such duty.

6. If the substructure of a road be suffered to lie until it has become rotten and unsafe, it is the negligence of the company.

7. Casualty from such cause is not an *ordinary peril* which one taking service in the company is presumed to incur.

8. In a suit by an employee of a railroad company who held the relation of a passenger, the court charged, that the baggage-car is an improper place for a passenger to ride; whether the rule against it was communicated to him or not, if he left his seat in the passenger-car and went into the baggage-car it was negligence, which nothing less than a direction or invitation from the conductor would excuse; such invitation should not be inferred from his having ridden there frequently with the knowledge of the conductor and without objection. *Held*, to be error.

9. The conductor is the person to administer the rules of the company and apply them according to the circumstances. The passenger travels under his directions and should conform to them. From the nature of his position he must exercise some discretion.

October 26th 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Armstrong county*: No. 94, to October and November Term 1867.

This was an action on the case brought, May 6th 1862, by Dennis O'Donnell against The Allegheny Valley Railroad Company. The case was in the Supreme Court before, and the judgment reversed: 14 Wright 490.

The plaintiff was a journeyman carpenter in the employ of the defendants under Edward Liston, the master carpenter. The company were repairing one of their bridges over the Kiskiminetas, about 15 miles south of Kittanning, where the plaintiff with other hands lived. They went to their work by the defendants' morning train of cars from Kittanning, and returned by the train

in the evening.  On the 2d of March 1861, as he with others was returning, riding in the baggage-car, when within about two miles of Kittanning a rail broke, the baggage-car was thrown off the track, the plaintiff thrown out, both legs broken, one had to be amputated, and he was otherwise badly injured.  To recover compensation for these injuries he brought this suit.

Mr. Liston testified : " I had the supervision of the road from Kittanning to Pittsburg, in building bridges, &c.  I was authorized by the company to employ hands under me.  I employed the plaintiff to work as a carpenter on the Kiskiminetas bridge. He was living in Kittanning.  While engaged at that bridge I and my hands boarded in Kittanning.  I refer to such hands as lived there, or near there.  We came to Kittanning at night and went down to the bridge in the morning.  By my contract I authorized the plaintiff to go home at night and return in the morning, and by that contract he was to travel back and forth to and from his work on the cars.  I was to pay him so much per day, and he was to travel on the train free of charge.  The riding free of charge was part of the consideration of the contract.  If he had been compelled to pay his fare I could not have hired him to work at the same price I did.  Myself and hands, as a general thing, rode in the baggage-car.  The conductor of the train knew the fact and saw us in the train twice every day.  He made no objection to our riding there ; he did not give us notice to leave it, but allowed it.  It was customary for me and my hands to ride in the baggage-car to and from work.  We could either ride there or in the passenger-car, if not crowded too much.  *   *   * I did not consider the ties good ; they were rotten.  I would not consider the road safe.  There was no ballast but earth. The chair-ties were not sound enough to keep the rails in their places.  The ties were pretty much all hemlock.  I understand about laying the wood work of a railroad.  When the locomotive would pass over a solid tie it would settle down and bound with such force as would be apt to break the rail.  The chair-ties giving, and the others solid, would have the effect of throwing the locomotive off the track.  There might have been a tie put here and there on the road.  As a general thing there were not any repairs at this place before the accident.  In going up and down, myself and hands, including the plaintiff, assisted in taking in and putting out freight, at the request of the conductor on the cars. Myself and hands always helped to remove obstructions of any kind on the road that would detain us from getting to the bridge or up to Kittanning.  The assistance in taking in and putting out freight and removing obstructions was voluntary on the part of myself and hands ; it was not compulsory.  We were not under the orders of the conductor in doing it.  Mr. O'Donnell was hired by me by the day.  I paid the men at the bridge.  He was hired

[O'Donnell v. Allegheny Valley Railroad Co.]

by me specially to work on the bridge as a carpenter. When I employed plaintiff there was no agreement what car he was to ride in; there was no contract that he should help to take in or put out freight. I had no authority to appoint baggage-masters, freight deliverers or receivers. Neither I or my hands were under the control of the conductor. Whatever we did in handling freight was voluntary on our part, but at conductor's request. We were not refused admission to the passenger-cars."

The evidence further was that a rail was broken where the accident occurred; there was no baggage-master on the car when the accident occurred; there were two passenger-cars, a baggage-car and a freight-car in the train, a brakesman between the two passenger-cars but none between the baggage-car and the passenger-car. There was much evidence also as to the rottenness of the cross-ties and the generally bad condition of the road; most of the ties having been in since the road was made about thirteen years previously.

These points, with others, were submitted by the plaintiff:—

7. The responsibility of a railroad company, for the safety of their passengers does not depend on the kind of cars in which they are carried, whether passenger or baggage cars, provided they are lawfully on the train, and even if the Allegheny Valley Railroad Company had a rule forbidding persons to ride in the baggage-car, the violation of such a rule by a passenger is not negligence in him unless he had notice thereof, and the burden of proof is on the defendant.

9. If the plaintiff was accustomed daily to ride in the baggage-car, with the knowledge of, and without objection by the conductor, the jury may from that fact infer consent of the conductor, and in that case also the defendants would be liable.

10. Under the evidence, the plaintiff's presence in the baggage-car was not wrongful, and in such case its propriety cannot be inquired into in claiming or resisting damages for an injury, and it is no answer to the plaintiff's claim to say that if he had not been there he would not have been injured. Under the evidence this was not the proximate cause of the injury, and is not therefore to be considered, and consequently the question of concurring negligence does not arise.

The court (Sterrett, P. J., of the Fifth Judicial District) charged: * * * "1. Was the accident which resulted in the injury of the plaintiff occasioned by the negligence of the company, its officers or servants? Any neglect or omission of duty on the part of a railroad company or individual engaged in carrying passengers is negligence. It is the duty of such company to provide and keep in good repair a safe and sufficient track, which includes ties and rail of sufficient material, size and strength, properly laid down and screwed in their place, to provide suitable

9 P. F. Smith—16

engines and cars, and employ a sufficient number of tried, sober and competent men to act as conductors, engineers, brakemen, &c., in running their trains.

"In short, it is their duty to guard against every apparent danger that may beset their passengers. The law holds them to a strict responsibility for care, vigilance and skill on the part of themselves and their employees. They are bound to exercise the strictest vigilance, and carry their passengers to their destinations safely, if human care and foresight can accomplish it. They are responsible for any injury caused by defects in the road, the engines or the cars, or by any species of negligence, however slight, which they or their servants may be guilty of.

"When, in carrying a passenger, he is injured without any fault on his part, the law raises primâ facie a presumption of negligence and throws on the company the burthen of showing that it did not exist. This may be shown and the legal presumption repelled by proving that the injury resulted from inevitable accident, or that it was caused by something against which no human foresight or prudence could provide. Whatever these can do for the safety of the passengers the law requires the transporting company to do. Guided by these principles, then, you will determine whether the company was guilty of negligence which caused the accident and consequent injury to the plaintiff. It is manifest that there must have been some cause for the rail breaking. * *

"[The defendant, on the other hand, contends that the evidence shows the ties were all sufficient, the rails good and well secured, and that the break was the result of some cause which the company could not have foreseen and provided against, that the train was well manned by competent and skilful officers who discharged their duty. If this be so, no negligence should be imputed to the company.]

"In case you find that there was negligence on the part of the company, you will then consider the second question, to wit:

"What relation did the plaintiff sustain to the company at the time of the accident? Was it that of a regular passenger, or was it that of an employee in such a sense as to preclude a recovery in this case?

"In one sense the plaintiff was undoubtedly an employee, but was he an employee in the sense contended for by the learned counsel for the company? We think not, if you find the fact to be as testified to by Mr. Liston. The recognised rule of law on this subject is, that where several persons are employed in the same general service, and one is injured by the carelessness of another, the employer is not responsible. The reason generally assigned for the rule is, that when a person enters the service of his employer in any business that brings him in contact, while in

[O'Donnell *v.* Allegheny Valley Railroad Co.]

the discharge of his duty, with other servants of the same employer, he is presumed to assume all the risk of injury attendant upon such service while engaged therein. At the time the plaintiff in this case was injured, he was not engaged in the service for which he was employed. He had been. employed to work as a carpenter on defendant's viaduct. He had completed his day's work, and was some twelve or thirteen miles from his field of labor on his way home, in pursuance of defendant's agreement to furnish him transportation to and from home.

"If, while at work on the bridge, he had been injured by the negligence of any of his fellow-carpenters, or other employees of the company with whom he was associated or brought in contact, or by the negligence of any of the company employees in running trains on or against the bridge where he was at work, he would have no right of action against his employers, because these may be regarded as risks which he contemplated and voluntarily assumed when he entered the service of the company. Riding on the cars to and from Kittanning was no part of the service to be performed by him for the company. If he had paid his fare regularly on the cars, or had travelled to and from his work in a private conveyance, and had been negligently injured by defendant's cars at the same point on the road, it would hardly be pretended that he was without remedy against the company on the ground that he was an employee.

"The testimony shows that the plaintiff paid no fare to the company; but it is claimed that this does not alter his relation if there was a consideration for granting him the privilege of riding. It is claimed that the advantage to the company in procuring the services of the plaintiff was the consideration received by it. Mr. Liston testifies that he could not have hired the plaintiff if he had not agreed to have him taken down and up on the cars free of charge. The company was in need of hands, and this method of securing them was adopted. Trains were running daily anyhow, and no fare was lost to the company by taking Mr. Liston's men up and down without charge. It was doubtless regarded as an advantageous arrangement for the company, or its agent would not have made the contract. If you find from the evidence that the plaintiff was employed and rode on the cars, as stated by Mr. Liston, and that some advantage or benefit was derived by the company from the arrangement, we think that you will be justified in finding that the relation of the plaintiff to the railroad company was the same, in its legal effect, as that of a regular passenger for hire on the road; and we so instruct you as matter of law.

"Was the plaintiff himself guilty of such negligence as would prevent a recovery in this case? * *

"We have already called your attention to the duty of a rail-

road company. * * There are also duties to be observed by passengers. One of these is to occupy places provided for them in the cars. The baggage-car is not the proper place for passengers. It is not intended for any such purpose, and [if a passenger undertakes to stand on the platform or ride in the baggage-car he is guilty of an act of negligence, and if that negligence contributes to the injury he cannot recover against the company.] If a passenger consents to ride in a baggage-car by the direction or invitation of the conductor of the train, and is injured while there, without fault on his part, the company cannot set up the fact in defence to a claim for damages, unless, perhaps, he knows that the conductor, in inviting him into the baggage-car, is violating the positive rules and regulations of the company."

The judge refused the plaintiff's 7th point, except so far as it was affirmed in the general charge.

To the 9th point he answered :—

["If you find the facts as stated in this proposition, the consent of the conductor may be inferred, but it does not necessarily follow that the company would be liable. If the plaintiff rode in the baggage-car by invitation or direction of the conductor, the fact of his being in that car, pursuant to such invitation or direction, will not affect his right to recover in this action; but such invitation or direction should not be inferred from the mere fact that he had been accustomed to ride frequently in the baggage-car with the knowledge and without objection from the conductor.] * *

"If the plaintiff left the passenger-car and went into the baggage-car without the invitation or direction of the conductor, he did what no passenger has a right to do, even if you are satisfied that he had been accustomed frequently to ride in the baggage-car with the knowledge of the conductor and without objection from him. The evidence, if believed by you, shows that a very short time before the accident, the plaintiff was seated in the passenger-car, and that there was plenty of room there.

"As we have already intimated the company and its engineers have their appropriate duties to perform, and the passenger has his. It is his duty to occupy the place provided for passengers. The platforms are intended as means of ingress and egress. [The baggage-car is designed for baggage and not for passengers, and any one who is possessed of sufficient intelligence to travel, should be held to know that the baggage-car is not an appropriate place for passengers, and if he chooses to stand on the platform or leave his seat in the passenger-cars and go into the baggage-cars, while the train is in motion, he oversteps the line of duty and is guilty of negligence, and if it is shown to the satisfaction of the jury that such negligence contributed in a material degree to his injury, he cannot recover against the company.] If, however, it

[O'Donnell *v.* Allegheny Valley Railroad Co.]

does not appear that such negligence contributed to the injury, it will not affect his right to claim damages."

He answered the 10th point:—

"We refuse to instruct you as requested in this point. It embraces questions of fact which it is not the province of the court to pass upon, the facts are for the jury."

The verdict was for the defendants: the plaintiff took a writ of error. He assigned for error the answers to his points and the parts of the charge in brackets.

*D. Barclay* (with whom was *J. A. Fulton*), for plaintiff in error, cited McAuliff *v.* Eighth Av. Railroad, Pitts. L. J., Dec. 18th 1865, p. 277; Carroll *v.* N. York and N. H. Railroad, 1 Duer 571; Lack. and B. Railroad *v.* Chenewith, 2 P. F. Smith 382; Penna. Railroad *v.* Ogier, 11 Casey 60; Myers *v.* Snyder, Bright. Rep. 489; O'Donnell *v.* Allegheny V. Railroad, 14 Wright 490; Alden *v.* N. Y. C. Railroad, 3 Am. Law Reg. N. S. 498.

*Golden* and *Neale*, for defendants in error, cited Penna. Railroad *v.* Zebe, 9 Casey 318; Sullivan *v.* Ph. and Read. Railroad, 6 Casey 234; Penna. Railroad *v.* Aspell, 11 Harris 149; Frazier *v.* Penna. Railroad, 2 Wright 110; Penna. Railroad *v.* Henderson, 7 Id. 449; Lack. and B. Railroad *v.* Chenewith, *supra*.

The opinion of the court was delivered, January 4th 1869, by

AGNEW, J.—On the former writ of error in this case judgment was reversed because the testimony of Mr. Liston had been rejected, bearing on the question whether the plaintiff was a passenger entitled to a safe transit, or a mere servant running the risk of the negligence of his fellow servants. The testimony of Mr. Liston on the second trial was more clear and pointed upon this question than it had been on the first. The substance of it is this: He had the supervision of the carpenter work on the road from Kittanning to Pittsburg, and was authorized to employ hands. He specially employed the plaintiff to do carpenter work upon the bridge over the Kiskiminetas, about fifteen miles below Kittanning. The plaintiff and other hands lived in and near Kittanning, and it was an accommodation to the company to have them to work at the bridge. Liston agreed with the plaintiff as a part of his contract of hiring that he should travel on the passenger train down and up free of charge, and in consequence of this hired him at a less price per day than if the plaintiff had paid his fare, and if he had not so agreed he could not have been employed at the wages he was paid. The work of the plaintiff was wholly at the bridge, and he received his pay there. At the time of the accident the plaintiff had finished his day's work, and was ten or twelve miles distant from the bridge on his way home.

[O'Donnell *v.* Allegheny Valley Railroad Co.]

Under these circumstances the court below instructed the jury that the plaintiff was travelling as a passenger and not in the capacity of a servant. The defendants in error, considering it a fundamental question fatal to the plaintiff's right to recover, asks us to affirm the judgment, although no writ of error was taken by them. We think the company cannot set up this objection upon the present writ of error. But as this case must go back for a retrial for misdirection of the court on another point, it is proper to express our opinion as a guide to the court on the next trial. We think the court left this question fairly to the jury on the testimony of Liston and with proper instructions.

It is now settled in Pennsylvania, as it had been in other states and in England, that when several persons are employed as workmen in the same general service, though in different parts of it, and one of them is injured through the carelessness of another, the employer is not responsible, unless he had employed unfit persons for his service: Ryan *v.* Cumberland Valley Railroad Co., 11 Harris 384; Caldwell *v.* Brown, 3 P. F. Smith 453. In the last case our brother Read has brought together most of the decisions. But this case is clearly distinguishable from them all. In Ryan *v.* Cumberland Valley Railroad Co., the plaintiff was a laborer on a gravel train, whose business caused him to travel upon it in the exercise of his employment. The loading and unloading of gravel necessarily required the hands employed in that work to travel with the train from place to place. He gave nothing out of his wages for his fare and travelled not as a passenger to a place of destination, but went with the train whithersoever it became necessary to get and deposit gravel. His travelling on the cars was like that of a brakesman or a fireman in pursuance of his employment, and not under a contract for carriage.

Gilshannon *v.* Stony Brook Railroad Co., 10 Cush. 228, resembles this case in the feature that the plaintiff was a laborer at a particular place upon the railroad and was carried to and from his work. But it differs in these marked characteristics: He rode merely for his own convenience and ease, voluntarily and beneficially, on the gravel train under no contract for carriage, and no compensation for his passage directly or indirectly. Dewey, J., likened the case to that of a wood-chopper riding for his own convenience upon his employer's wagon driven by another servant, who overturns it by his negligence: Tunney *v.* The Midland Railway Co., 1 Law Rep. C. P. 291 (1866), differs from this case in the important feature that it was part of the plaintiff's employment as a laborer for specific wages to travel from Birmingham to Derby on a train called the "pick up" train for the purpose of gathering up materials left along the line of road; and he was

required to be ready for the train at Birmingham and start thence on his duty and to return there.

The case was put directly on the ground that it was part of his contract to *travel* thus on the train. He was carried as an employee and not as a passenger, and it was not found that he paid fare for his travel either directly or indirectly.

Farwell v. Boston and Worcester Railroad Co., 4 Metcalf 49, was the case of an engineer on a locomotive injured by the negligence of a switch-tender, both being in the course of their regular employment and in the same general service.

Morgan v. Vale of Neath Railway Co., Law Rep. 1 Q. B. 149 (1865), has no bearing upon the point of this case. It decides the same general principle that servants in the same general business, though dissimilar in the immediate objects of their employments, take the risk of each other's negligence. The plaintiff, a carpenter, standing on a scaffold near a turn-table, was thrown from his stand by the negligence of porters engaged in turning an engine on the table.

These are the only cases which need be particularly noticed. In this case, however, the plaintiff, O'Donnell, travelled not as a part of his employment as a carpenter at the bridge, but as a passenger from and to his home. He was not hired to pursue his business *on* the train, but was carried in consideration of a reduction in the price of his wages. When his day's work was performed he was no longer in the service of the company, but was free to go or to stay, and when he travelled in effect paid his fare out of his wages: Myers v. Cumberland V. Railroad Co., 5 P. F. Smith, is more directly in point. There as soon as Myers had performed the special act he had undertaken to do, which on the first writ of error was held to place him in a temporary relation of service, and had returned to his stand on the platform, his relation as employee ceased, and it was held he was entitled to the protection of a passenger. We adhere to the doctrine of Ryan v. Railroad Co. and Caldwell v. Brown as the general rule, and as the safe one in governing the relation between the employer and employed. But human life is too precious to force the doctrine beyond its reasonable bounds, and this was declared in effect by the Chief Justice in Catawissa Railroad Co. v. Armstrong, 13 Wright 186. He said: "I am not for extending the doctrine further than our cases have extended it. I am for leaving it there." Referring to the former writ of error he said: "It was before us in the case of O'Donnell v. Allegheny V. Railroad Co., at the last term of the Western District, and in that decision we did not extend the doctrine." Following the same track, it was held in Hunt v. Pennsylvania Railroad Co., 1 Smith 475, that the liability to the hands employed by a *contractor* was confined

[O'Donnell *v.* Allegheny Valley Railroad Co.]

to him as their principal, and that he and they were not to be considered as common employees under the same company.

If the facts be as alleged by the plaintiff, his case stands also on the ground that the casualty did not arise from an ordinary peril of the service. Ordinary peril is the rule stated by Shaw, C. J., in Farwell *v.* Boston & Worcester Railroad Co., 4 Metc. 57. In Caldwell *v.* Brown, *supra*, Justice Read quotes the rule as stated by Judge Gray in Gilman *v.* Eastern Railroad Co., 10 Allen 233, to wit, that the servant assumes all the risks of the master's service which the master cannot control, including those arising from the negligence of fellow-servants, but qualified thus: —" The master indeed is bound to use ordinary care in providing suitable *structures*, engines, tools and apparatus, and in selecting proper servants, and is liable to other servants in the same employment if they are injured by *his own neglect* of duty." In the more recent case of Weger *v.* Pennsyvania Railroad Co., 5 P. F. Smith 465, Justice Read restates the substance of the rule and remarks, "that it seems to be conceded that if there be any fault in the selection of the other servants, or in continuing them in their places after they have proved incompetent perhaps; or in employing *unsafe machinery*, the master will be answerable for all the injury to his servants in consequence." In the present case the injury arose from the breaking of a rail, and according to the plaintiff's testimony this was caused by its resting upon rotten ties. One of the chief witnesses of the defendants says the ties were the same put in when the road was made; that two-thirds were hemlock, and that the road had been built twelve or thirteen years. If the fact be so, it is a clear case of faultiness and insecurity in one of the permanent structures of the company, evidencing the negligence of the company itself. A railroad company is bound to furnish a safe and sufficient roadway. It owes this as a duty to all who travel over it. It is true, that remotely its unsafe condition might have been owing to the negligence of some one in its service, who failed to report its condition or to put it in repair. But it might also be the mere neglect of the company from false economy to order the repair or to furnish the means. The remote negligence of servants will not excuse the non-performance of such a direct and immediate duty as this. If the substructure carrying the rails were suffered to lie until it had become rotten and unsafe, it is the negligence of the company itself, and not merely that of its servants. Casualty from such a cause is not one of those ordinary perils which presumptively every one incurs who takes service with the company. It is not to be likened to the breaking of a rail from frost or mere accident, or from some cause immediately traceable to the negligence of another employee. It would be a cruel exposure of life to hold such a casualty to be an ordinary risk of the service, and

[O'Donnell *v.* Allegheny Valley Railroad Co.]

it would extend a license to negligence on part of those whose duty it is to be careful of human life.

The next question relates to the car in which the plaintiff was at the time of the accident. Summing up the doctrine of the court as found in the charge and answers to the points, it was this: That the baggage-car is an improper place for a passenger, and whether the rule of the company forbidding him to be there is made known to him or not, his own intelligence should teach him that it is not his proper place—that if he leave his seat in a passenger-car and go into the baggage-car, he is guilty of negligence. That nothing less than a direction or an *invitation* from the conductor to go there will excuse this negligence, and such direction or invitation should not be inferred from the mere fact that he had been accustomed to ride frequently in the baggage-car with the knowledge of the conductor, and without objection. The judge therefore instructed the jury that if the plaintiff left the passenger-car without the direction or invitation of the conductor, he did what no passenger has a right to do, even though he had been accustomed to ride there with the knowledge of the conductor and without his objection. In view of the evidence this instruction was erroneous. The plaintiff had been riding in the baggage-car twice a day for about two months. Murphy the conductor himself admitted that Liston's men rode frequently in the baggage-car without his objecting—that he never ordered them out. When they got on that car they generally remained there without objection—that he had no recollection of requesting them to go into the passenger-car, and that he had not at any time requested the plaintiff to leave the baggage-car. The reason for this is obvious. These hands, though passengers on the train from the terms of their employment, still retained the outward appearance of employees. They were in their working clothes, which owing to their employments were doubtless often soiled and filled with perspiration. They were probably at times not considered pleasant travelling companions for those who sat in the passenger-cars, and at times the cars were probably filled. It was not at all unnatural that they themselves should wish, and that the conductor should desire them to travel on the baggage car out of the immediate presence of the passengers. Under these circumstances it cannot be justly said of them as of ordinary passengers, "that any one who is possessed of sufficient intelligence to travel should be held to know that the baggage-car is not an appropriate place for passengers," nor to say although the consent of the conductor to riding there may be inferred from these facts, yet it does not follow that the company is liable unless it is shown that they were there at the *invitation* or by the *direction* of the conductor.

It is undoubtedly the right of the company to prescribe rea-

[O'Donnell *v.* Allegheny Valley Railroad Co.]

sonable rules for the regulation of those who travel as passengers on the cars : Sullivan *v.* Philadelphia and Reading Railroad Co., 6 Casey 238 ; Powell *v.* Pennsylvania Railroad Co., 8 Id. 416 ; Miles *v.* West Chester Railroad Co., 5 P. F. Smith 209. But the right to regulate is not to be carried to an unreasonable extent, or to make one regulation conflict with another. It is no doubt a proper rule that passengers shall not travel in a baggage-car, but it is as well known that the conductor is the person to administer the rules of the company and to apply them according to the circumstances. The passenger travels under his directions, and generally is bound to conform to them. The conductor acts under a general authority, and from the nature of his position must necessarily exercise some discretion. In Lackawanna and Bloomsburg Railroad Co. *v.* Chenewith, 2 P. F. Smith, it was held that when the owner of a freight-car attached it with the consent of the agents of the company to a passenger train, contrary to the rules of the company, he agreeing to run the risk, the company could not repudiate the act of their agents so as to free themselves from responsibility for their negligence, by which he was hurt and his car wrecked. The same principle was asserted in perhaps a stronger case, where a valuable mare was lost by using straw (which caught fire from the sparks of the engine) for her bedding in the car, contrary to the positive rules of the company : Powell *v.* Pennsylvania Railroad Co., 8 Casey 414 ; Goldey *v.* Railroad Co., 6 Id. 242. From the evidence in this case, the jury might reasonably conclude that O'Donnell was in the baggage-car with the permission of the conductor and for the benefit of the company, and was rightfully there at the time of the accident. His right to recover for an injury arising from an unsafe track was the same when in the baggage-car as when in the passenger-car. The risk attended every car which traversed the unsafe roadway, and was confined to none in particular.

Judgment reversed, and a *venire facias de novo* awarded.

Concurring opinion of

READ, J.—I concur in the reversal of the judgment for errors committed on the trial in the court below. But as I do not agree as to all that is laid down, as the rule that should govern in the future trial of the case, I think it proper to state my views of the law.

The general rule as to the non-liability of a master to a servant for an injury occasioned by the negligence of a fellow-servant has been firmly established by a series of decisions in England, Scotland, Ireland and America for the last thirty odd years. The first case in England was Priestly *v.* Fowler, in the Court of Exchequer, in 1837, and the last case that of Wilson *v.* Merry, decided in the House of Lords on the 29th May 1868, 1 Scotch

[O'Donnell v. Allegheny Valley Railroad Co.]

& Divorce Appeals 326 (Law Rep.), but better reported in 19 Law Times Rep. N. S. 30, where the arguments of counsel are given at length, Sir Roundell Palmer citing Albro v. Agawam Canal Company, 6 Cush. 75. This case is of course of the highest authority not only as a decision of the ultimate court of appeal of Great Britain and Ireland, but of a tribunal composed of the Lord Chancellor (Lord Cairns), Lord Cranworth, Lord Chelmsford and Lord Colonsay, judges of the highest reputation for learning and ability. In Caldwell v. Brown, 3 P. F. Smith 453, decided in 1866, the cases in this country recognising the rule are stated.

The earliest remarkable case in this country is that of Farwell v. Boston and Worcester Railroad Corporation, 4 Metcalf 59, decided in March 1842 by Shaw, C. J., which has always been considered as a leading decision of high authority, both in England and America. In his opinion the Chief Justice quoted Priestly v. Fowler, 3 Meeson & Welsby 1, and Murray v. South Carolina Railroad Company, 1 McMullen 385. This decision was quoted and followed by the Supreme Court of New York in Brown v. Maxwell, 6 Hill 592, in July 1844.

The cases in Massachusetts are very instructive: Hayes v. Western Railroad Corporation, 3 Cushing 270, decided in 1849, where one brakesman was injured by another brakesman although the train was short of hands; Gelshannon v. Stony Brook Railroad Corporation, 10 Cushing 222, decided in October 1852, where a common laborer riding to his place of labor on a gravel train was injured by the negligence of the company's servants; the company was held not liable although both servants were not in a common employment.

"If the plaintiff," said Dewey, J., "was by the contract of service to be carried by the defendants to the place for his labor, then the injury was received while engaged in the service for which he was employed, and so falls within the ordinary cases of servants sustaining an injury from the negligence of other servants. If it be not properly inferable from the evidence that the contract between the parties actually embraced this transportation to the place of labor, it leaves the case to stand as a permissive privilege granted to the plaintiff of which he availed himself to facilitate his labors and service, and is equally connected with it and the relation of master and servant, and therefore furnishes no ground for maintaining this action."

This covers the present case in either aspect of the evidence.

This case was preceded by the cases of Albro v. Agawam Canal Company, 6 Cushing 75, and King v. Boston & Worcester Railroad, 9 Cushing 112, and followed by Seaver v. Boston and Maine Railroad Corporation, 14 Gray 466, where a carpenter was carried over the railroad to repair fences, bridges and switch-frames, and

[O'Donnell *v.* Allegheny Valley Railroad Co.]

was injured by the negligence of the engineer or of servants whose duty it was to inspect the axles of the cars; and all these cases are recognised and approved in Gilman *v.* Eastern Railroad Corporation, 10 Allen 233, decided at January Term 1865.

In this case the corporation was held not to be responsible to a person employed by it to repair its cars, for a personal injury arising from the negligence of a switch man, in failing properly to adjust a switch upon the track, over which he is carried by the corporation, free of charge between his home and the place of his work.

In England the authorities support this view.   Waller *v.* South East Railroad Company, 22 Law J. Exch. 205, May 7th 1863, was the case where the guard was killed, by the negligence of the gauger of the plate-layers, to renew the decayed metals which fasten the chains to the sleepers of the railways.   Lovegrove *v.* London and Brighton Railroad Company, 33 Law J. C. P. 329, 6th June 1864, was the case of a laborer filling trucks with ballast, injured by negligence of plate-layers: Feltham *v.* England, Law Rep. 2 Q. B. 33, November 24th 1866.   In Morgan *v.* Vale of Neath Railroad Company, Law Rep. 1 Q. B. 149, in the Exchequer Chamber, November 27th 1865.   It was the case of a carpenter who was injured by porters in the company's service, carelessly shifting an engine on a turn-table.

In all these cases the companies were held not liable.

In Tunney *v.* Midland Railroad Company, Law Rep. 1 C. P. 291, January 23d 1866, it was held that a laborer carried not as a passenger but in the course of his contract of service, there was nothing to take the case out of the ordinary rule which exempts a master from responsibility for an injury to a servant through the negligence of a fellow-servant, where both are acting in pursuance of a common employment.

The case in 10 Cushing 75 was referred to in the argument as it had been placed in a note to one of the reports of Morgan *v.* Vale of Neath Railroad Company.

In view of these authorities and their entire coincidence with the general rule, the correctness of which is not disputed, I am of opinion that Dennis O'Donnell was not a passenger but a servant of the company in the same common employment as the engineer, fireman, conductor and other servants of the company.

The rule as to strangers as laid down by my brother Agnew as to the duties and liabilities of the company with regard to their track, road-bed and machinery, is perfectly sound, but it may have a large qualification as to servants engaging as such with a full knowledge of their state and condition.

I concur in reversing the judgment and awarding a *venire de novo*.