# Schott *v.* Pennsylvania Railroad Company, Appellant.

*Workmen's Compensation Law—Accident in course of employment—Mixed questions of law and fact.*

The determination that an employee's injury was received in an accident arising in the course of his employment is a mixed question of law and fact.

An employee of a railroad company, employed in a clerical capacity, was given reduced transportation to and from his place of employment. His working hours were from 8:30 a. m. to 5:30 p. m. While traveling from his work his train stopped at a point a slight distance from the station platform waiting for a freight train to pull out. The claimant, instead of waiting until his way to the station platform was clear, left the passenger coach and crawled up on the bumpers of two freight cars for the purpose of making his way across to the platform of the station. While so doing the freight train started and he fell to the track and sustained severe injuries.

*Held,* that the claimant's employment having ceased at a definite time, that he was not an employee, but a passenger while returning from the place of his employment, and that he was not entitled to compensation under the Workmen's Compensation Law.

Argued April 21, 1921. Appeal, No. 132, April T., 1921, by defendant, from judgment of C. P. Washington County, February T., 1921, No. 555, dismissing appeal from award of Workmen's Compensation Board in case of Edward H. Schott v. The Pennsylvania Railroad Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Appeal from award of Workmen's Compensation Board. Before MCILVAINE, P. J.

From the record it appeared that the proceedings were instituted to recover the injuries sustained by claimant in the employ of the Pennsylvania Railroad Company. The circumstances of the accident are stated in the opinion of the Superior Court.

582, (1921).]   Assignment of Error—Opinion of the Court.

*Error assigned,* among others, was in dismissing appeal from Workmen's Compensation Board.

*Rufus F. Marriner,* of *Wiley, Marriner & Wiley,* and with him *Harry Z. Maxwell,* for appellant.—The injury sustained by the plaintiff was not received in the course of his employment: Flucker v. Carnegie Steel Company, 263 Pa. 113; Stahl v. Watson Coal Company, 268 Pa. 452; McNulty v. The Pennsylvania R. R. Co., 182 Pa. 479; Fekete v. Lehigh & W.-B. Coal Co., 71 Pa. S. C. 231; Pennsylvania R. R. Co. v. Price, 96 Pa. 256; Spizzirri v. Krouse, 73 Pa. S. C. 476.

*David M. McCloskey,* for appellee.

OPINION BY ORLADY, P. J., July 14, 1921:

The contention between the parties to this appeal had its inception in an accident in which the claimant suffered a serious injury. He filed a claim before the Workmen's Compensation Board. The referee recommended an award. The board approved of the findings of the referee and made an order of compensation. The Court of Common Pleas of Washington County dismissed an appeal and affirmed the conclusion reached by the referee and the board. Then followed this appeal.

The controlling question for our determination is, did the accident occur in the course of the employment of the claimant? That question is not one purely of fact where this court would be bound by the findings of the referee confirmed by the board, but is a mixed question of law and fact. "The finding that an employee's injury was received in an accident arising in the course of his employment is a mixed question of law and fact": Gallagher v. Delaware, L. & W. R. R. Co., 72 Pa. Superior Ct. 128. That the claimant was for a considerable period of time before the accident in the service of the defendant company is not a matter of any dispute. He was employed as part of a clerical force at West Brownsville.

He resided at Monongahela City, some few miles distant. He testified himself that at the time of his employment the defendant's officials were advised of the fact of his residence there and that it would be necessary for him to travel to and from his work in the trains of the defendant. It was agreed, he says, at the time he took service, that during the first two months of his employment he would be sold one hundred trip tickets at a reduced rate of fare and that, after the lapse of that period, he would be given a pass entitling him to ride to and from his home without the payment of any fare. His working hours were from 8:30 a. m. to 5:30 p. m., but upon not infrequent occasions he was able to catch a train leaving the place of his employment at 4:31 p. m. It was upon that train he traveled on the afternoon of the accident. The train arrived at his point of destination in safety. When it stopped at the station a freight train, moving in, the other direction, had made a temporary stop on the track between the main one, on which the passenger train stood, and the station platform. The freight train was to pull in on a siding and its momentary delay was for the purpose of allowing the proper employee to open the switch that would admit it to the siding. The claimant determined not to wait quietly in his seat in the passenger coach, until his way to the station platform was cleared, but left the coach and crawled up on the narrow bumpers of two freight cars for the purpose of making his way across to the platform. Unfortunately for him, at that critical moment the freight train started and he fell to the track with the result that one of his feet was so badly crushed it had to be amputated. Did these facts that are undisputed warrant the inference that his injury occurred "in the course of his employment"?

As we have seen, his actual service to his employer ended when he left the office to go to his home. Under special circumstances and conditions our courts have construed the statutory language in a liberal manner,

and have held in several cases, that the facts there presented would justify a construction of the legislative expression that would continue the course of employment for a longer or shorter time, even though the actual course of employment had been suspended until another day. Each one of those cases must be carefully studied and correctly understood in the light of its own facts. Now it is clear we have not, in the case at bar, the very special and unusual conditions upon which it was found proper to uphold a claim for compensation in Haddock v. The Edgewater Steel Co., 263 Pa. 120: nor have we an employment of the special and peculiar character that existed in Knorr v. Central R. R. of N. J., 268 Pa. 172, although that case and the one at bar have several important facts in common. In that case the claimant lived some fourteen miles distant from the point at which his service to the railroad company would necessarily begin; but he was an extra fireman and was subject to call at unexpected times in order to proceed to the point of actual service for the purpose of taking out a train. He was furnished with a pass enabling him to ride free of charge in going from his home to that point and in returning again to his home after his service had been completed. It was while on his way to his home after the completion of his day's work, and while traveling in the train of the company where he was expected to travel, that he was injured. It is made clearly to appear in the opinion of Mr. Justice KEPHART that "In accepting and using free transportation to and from work, Knorr was not to be regarded as a passenger but as an employee, in this case under general employment, which began when he boarded the train at Mountain Top (his home) and continued until he entered the particular premises where he was to perform the special work designated by the employer."

There was another fact present in that case, referred to in the opinion, which it seems to us has an important influence in the disposition of our question while it was

only incidental in the case referred to. Knorr finished his actual service for that day at the town of Ashley. After having checked out, as it is called, to indicate the completion of his run, he, with some other employees, went to transact some business of his own in the town before taking the plane train to carry him to his home. It is said: ".True, while off the premises on his journey to the plane train, or in the town, his employment was suspended but it was immediately resumed when he boarded the plane train." This language emphasizes the fact, sufficiently apparent from a reasonable consideration of the statutory language used and the legislative intent disclosed thereby, that the "course of employment" is not coextensive with the entire period of time during which a man may be said to be an employee. For instance, in the case at bar the claimant was paid by the week. His service had been continuous for a period of several months during the prescribed hours of each working day. He was an employee, broadly speaking, of the defendant company during his evenings and nights at home and during Sundays and holidays, when he was in no sense acting in the course of his employment and was free to do whatsoever he chose to do.

We attempted to make this plain in Spizzirri v. Krouse, 73 Pa. Superior Ct. 476, where we said: "It was not the design of the lawmaker to make the employer an insurer against the consequences of every accident that might happen to an employee during the time of his employment; or the period that would elapse from the first moment he was employed until the instant, a day or years hence, when he ceased to work for the employer. ......The accident cannot be dissociated from the employment. It need not have been a direct or necessary consequence of the employment; but it must have happened while the relation existed, during the course of the employment and not during a suspension of it." In Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, in which the opinion was also written by Mr. Justice KEPHART

and handed down on the same day as that of Knorr v. Railroad Co., supra, the court thus states the material facts: "On May 31, 1918, Kuca left his regular working place, went to another section of the mine," to a different road or way from his proper working place, and with a companion came to an old abandoned opening "and there caused an explosion of gas; no duty or business called him to the scene of the accident, which was 500 feet distant from his proper working place; when he met death he was not engaged in the furtherance of the business or affairs of his employer; and nothing in the nature of his employment required his presence within 500 feet of the scene of the accident or in the section of the mine where the accident occurred." The award in favor of the claimant in that case, made by the Workmen's Board, was set aside.

The latest case which has been brought to our notice is that of Strohl v. Eastern Penna. Railways Co., No. 194, of January Term, 1921, in the Supreme Court, in which an opinion was handed down by Mr. Justice SIMPSON on March 28, 1921. The facts in that case were unusual and have been very clearly and briefly stated in the opinion. The claimant was primarily employed by the Lehigh Navigation Company. That company furnished electric current to the street car company, the defendant. Its quantity was measured by certain machinery on the premises of the Lehigh Company and the amount of it registered on meters which could be easily read. Desiring to have a report of the meter readings each evening, the street car company made an arrangement with the claimant that when he had finished his day's work for the Lehigh company, he should enter the meter readings on blanks prepared for that purpose and deliver one to the conductor of any car operating on the street that would take him to his home. In consideration of this slight service, he was given an employee's pass with individual tickets attached, each of which entitled him to a ride either way between his home and

the substation of the Lehigh company where he worked. While traveling home on one of these cars it left the track and he was injured. After stating these facts, the court said: "There was thus established between them the relation of employer and employee, notwithstanding the comparatively insignificant extent of the labor and compensation and though he was concurrently an employee of the navigation company," etc. In treating the critical question in that case, to wit: did the accident occur in the course of his employment? the learned justice uses this language: "In Knorr v. Railroad Company we held that an extra fireman of that company who was compensated in part by a pass entitling him to ride over its railroad while going to and from his work, was an employee and not a passenger during the time he was being thus transported. The distinction between that case and this is apparent, however, for there plaintiff had no regular hours of employment but was required to hold himself in readiness at his home to be called upon duty at any time and to respond at once when called; and hence must be considered on duty from the time he left his home until he returned thereto."

Further considering the case last cited and just quoted from, we have to observe that although the general relation of employer and employee between the claimant and the defendant company had been established; and although the discharge of the small service he was to render in consideration of his free ticket required him to board a car of the defendant and deliver his report to the conductor of that car, it was held that when that report was delivered his service was completed and he was no longer in the course of his employment. He could continue to ride if he chose or he could leave the car as soon as he had delivered his report. If he continued to ride, that was not in furtherance of the company's business and he then rode as a passenger and not as an employee. This conclusion is said to have been established by a long line of cited cases beginning as early as O'Don-

nell v. R. R. Co., 59 Pa. 239, and continuing down to and including Elmer v. Railways Co., 251 Pa. 505. It is true most of these cases were actions at law for the recovery of damages, but it became a basic inquiry in each of them to determine the relation existing, at the time of the injury, between the employer and the person injured. If the plaintiff, at the time he was hurt, was in the course of his employment and the injury resulted from the negligence of a fellow servant, he was unable to recover. Otherwise, if the relation existing, just at the time of the accident, was that of passenger and carrier. The principle is thus stated by Mr. Justice POTTER in Dugan v. Coal Co., 241 Pa. 565: "In the cases of O'Donnell v. R. R. Co., 59 Pa. 239; McNulty v. R. R. Co., 182 Pa. 479, and Goehring v. Traction Co., 222 Pa. 600, it was held that where the employee was transported to and from his place of work, as part of the compensation for his services, he was to be regarded as a passenger and entitled to the benefit of the presumptions which arise in such a case."

The authority of those cases, it is declared by Mr. Justice SIMPSON in Strohl v. Railways Company, supra, has never been disturbed in Pennsylvania so that "The rule is too well settled to be now shaken. No case even qualifies the conclusion stated, where the employee is being transported as part of the compensation for his services, unless it is Knorr v. Railroad Company, supra, and the distinction between it and the cases above cited has already been sufficiently pointed out." The principle which must determine whether at a given time one who, generally speaking, was an employee of the defendant was actually in the course of his employment, or whether the course of employment had been suspended and he was being carried as a passenger, cannot and does not change because of later changes in the law as to the procedure by which he shall recover compensation, or as to the character of the defense which the employer may successfully interpose. It seems to us that the doctrine

so clearly enunciated and steadily followed in these cases about destroys the present claimant's theory that a constructive, rather than an actual, course of employment followed him long after his period of actual service was over for the day and protected him against any act he might choose to do whilst that constructive course of employment still existed.

We are of opinion the claimant failed to make out a case entitling him to compensation under the law. The award of the referee, the confirmatory action of the Workmen's Board, and of the court below, were all the results of a misapprehension as to the true legislative intent in confining the right to compensation to those cases where the accident occurred in the course of the claimant's employment.

The judgment of the court below is reversed and the record remitted to that court with direction to enter judgment in accordance with the principles of this opinion.