## Elmer *v.* Pittsburgh Railways Company, Appellant.

*Negligence—Street railways—Passengers—Crowded cars — Passenger standing on platform—Fellow servant rule—Conflicting evidence—Case for jury.*

1. While the proper place for a passenger on a street car is on the inside, and not on the platform, and while if he remains on the

platform when there is unoccupied space in the body of the car he assumes the risk incident to the position, he may excuse himself from obedience to this well established rule and occupy a place on the platform, by showing that there was no sitting or standing space on the inside of the car, and that, therefore, it was not reasonably practicable for him to enter the car, and if under such circumstances he rides on the platform with the consent of the conductor, he is entitled to the same degree of diligence as other passengers, to protect him from known and avoidable dangers.

2. Where a passenger who remains on the platform of a street car is injured, and seeks to recover damages from the street railway company therefor, the burden is upon him to show that it was not reasonably practicable for him to go inside the car.

3. A passenger cannot be convicted of negligence as a result of riding upon the platform of a street railway car, if the car is so crowded that inside the door at which he attempts to enter he cannot see the unoccupied space in the other end of the car. It is the duty of the conductor in such cases to see that the crowd moves to the farther end of the car so that passengers may enter. A passenger is not required to use force to push through a crowd in order to secure standing room in the car.

4. In an action against a street railway company to recover damages for personal injuries sustained by plaintiff in consequence of being thrown from the rear platform of one of defendant's cars on which he was riding, the case is for the jury and a verdict for the plaintiff will be sustained where it appears that plaintiff was a track foreman in the defendant's employ and was furnished free transportation to and from his work and wherever he wished to go, as part of the compensation for his services; that the car was so crowded that it was impossible for plaintiff to enter it and he was compelled to remain on the platform; and the evidence was conflicting as to whether plaintiff at the time of the accident was engaged in the company's services, or had finished his work for the day and was on his way home.

Argued Oct. 12, 1915.   Appeal, No. 64, Oct. T., 1915, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1912, No. 1126, on verdict for plaintiff, in case of Harry W. Elmer v. Pittsburgh Railways Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ.   Affirmed.

Trespass to recover damages for personal injuries. Before MACFARLANE, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,500.00 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*Richard C. Long,* with him *Clarence Burleigh* and *William A. Challener,* for appellant.

*Rody P. Marshall,* with him *Thomas M. Marshall* and *Oliver K. Eaton,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1916:

This is an action to recover damages for injuries sustained by the plaintiff by being thrown from the rear platform of the defendant's trolley car. There was a verdict and judgment in favor of the plaintiff and the defendant has appealed.

The plaintiff for some time prior to November 29, 1911, had been in the employ of the defendant company as a track foreman. As part of the compensation for his services, he testified that he was to be furnished free transportation to and from his work and wherever he wished to go. On the evening of that day he boarded one of defendant's cars at its station at the B. & O. bridge near Hays Borough for the purpose, as he alleges, of going to his home near Glenwood. He took a position on the rear platform of the car because, as he says, the inside of the car was so crowded with passengers that he could not enter it. A short distance from the station at which the plaintiff boarded the car, it made its first stop for receiving and discharging passengers. It again started and when running at a high rate of speed entered a curve and the plaintiff was thrown from the platform

into a ditch and severely injured. He alleges that he was thrown from the car by reason of the improper rate of speed at which it was run.

The defense in the court below was that the plaintiff was a fellow servant of the motorman who ran the car and for whose negligence the defendant was not responsible, and that the plaintiff was guilty of contributory negligence in riding on the platform when there was available room on the inside of the car. Both these questions were submitted to the jury in an elaborate charge which was really more favorable to defendant company on the law of the case than it had a right to demand. The court directed the attention of the jury to the testimony of all the witnesses bearing on the questions at issue, and the facts have been found against the defendant. The court overruled the defendant's motion for judgment non obstante veredicto, and judgment was entered on the verdict in favor of the plaintiff.

The appellant raises two questions on this appeal: (a) The plaintiff was a fellow servant of the motorman at the time of the accident for whose negligence the defendant was not responsible; and (b) the plaintiff was guilty of contributory negligence in remaining on the platform of the car when there was available room inside.

If, when the plaintiff was traveling on the defendant's car and the accident occurred, he was engaged in the defendant's service as an employee and was thus a fellow servant of the motorman he could not recover under the instructions properly given by the court to the jury. If, however, he was traveling as a passenger and entitled to the rights and protection of a passenger at the time the accident occurred, the negligence of the motorman would not bar his right to recovery. The defendant contends that from the plaintiff's own testimony it appears that under his contract he was to work ten hours a day and his quitting time was five-thirty in the afternoon, that the accident occurred before the time for him to

quit work, and that at the time of the accident he was going to see another gang of men, under his charge, to give them instructions for the following day. On the other hand, the plaintiff claims that the testimony in the case shows the accident occurred about twenty-five minutes past five, that under the terms of his employment there was no particular time for him to begin work in the morning, that ten hours were a day's work, and at the time the accident occurred he had quit work for the day and was returning to his home near Glenwood, and was not going to see another gang of men to instruct them as to their next day's work.

We have examined the plaintiff's testimony with care and we do not think it was sufficient to justify the court in declaring as a matter of law that at the time of the accident the plaintiff was engaged in the company's service and had not completed his day's work. The plaintiff himself testified that, under his contract with the defendant, there was no special time for him to commence or quit work, that ten hours were considered a day's work, that if he began early he could quit early, that on the day of the accident he began work about a quarter before seven o'clock and in the evening, the work at that particular point having been finished, he directed his men to put up their tools and go home, and that they had finished their work and were going home at the time the accident occurred. The plaintiff had a pick in his possession when he was on the car and the accident occurred. He testified as follows: "Q.—Had you finished your work for that day? A.—Yes, sir, finished work, and walked up to where the tool box was, and I got on the car to go home. Q.—Where were you bound for when you had this pick? A.—I was going home." There was other evidence in the case tending to sustain the plaintiff's contention that he and the gang of men under his control at this place had finished their work, had quit for the day, and had all left for their homes.

The plaintiff testified, and he was not contradicted,

that as part of his compensation for his services he was to have free transportation "to your (his) work and around, and anywhere you want to go." He was furnished regular tickets to pay his transportation and, after he boarded the car on the day of the accident, paid his fare with a ticket. The court instructed the jury on this point as follows: "He, plaintiff, had a right, when he got on this car, to present one of these tickets and ride on it. If he was using it simply as an employee, going from one part of his work to another, he was not a passenger. If he was traveling in the service of the company he was not a passenger; he was an employee, using an employee's ticket in and about the work which he was hired to do. If his work was over and he was not engaged in doing anything more that was any part of his daily work or duty to the company, if he was going home, then he was a passenger." We think there was sufficient evidence to submit to the jury on this question, and under these instructions the jury have found that, under the terms of his employment, the plaintiff was entitled, as part of his compensation, to receive free transportation to and from his work, and had quit work and was returning home at the time of the accident. He was, therefore, a passenger: McNulty v. Penna. R. R. Co., 182 Pa. 479. Hence, the negligence of the motorman in running the car at an improper rate of speed which caused the plaintiff to be thrown from the platform cannot be imputed to him and will not deprive him of the right to recover in this action.

The proper place for a passenger on a street car is on the inside and not on the outside or platform. He should, therefore, on boarding the car enter the inside and remain there until he reaches his destination. Reason and common prudence alike require that a passenger on a trolley car observe this rule for his own protection and safety. A street car company is held to the highest degree of care in transporting a passenger and it is reasonable that the latter should occupy the place prepared

by the company for him for its own protection as well as that of the passenger. If he violates this rule, he assumes the risk of his location elsewhere. If he takes a position on the platform of the car and remains there when there is unoccupied space in the body of the car, he assumes the risk incident to the position. He may, however, excuse himself from obedience to this well-established rule and occupy a place on the platform by showing that there was no seating or standing space on the inside of the car, and that, therefore, it was not reasonably practicable for him to enter the car. If, under these circumstances, he rides on the platform with the knowledge and consent of the conductor, he is entitled to the same degree of diligence as other passengers to protect him from known and avoidable dangers: Woodroffe v. Roxborough, Chest. Hill & Norristown Ry. Co., 201 Pa. 521. Whether or not there is available space for a passenger on the inside of the car is usually a question of fact to be determined by the jury. The burden is upon the passenger who remains on the platform and is injured to show that it was not reasonably practicable for him to go inside the car. Where there is sufficient evidence to warrant the question being submitted to the jury, it is for them to determine whether in any particular instance it is reasonably practicable for the passenger to enter the body of the car. There may be space at the end of the car opposite to that at which the passenger desires to and must enter, and yet he cannot be convicted of negligence if the car is so crowded, at and inside the door at which he attempts to enter, that he cannot see the unoccupied space in the other end of the car. It is the duty of the conductor in such cases to see that the crowd moves to the farther end of the car so that passengers may enter. A passenger is not required to use force to push through a crowd in order to secure standing room in the car. As correctly said in 5 Ruling Case Law 26: "A passenger is not required to disregard totally the courtesies of life by violently pushing and

crowding his way by main force through a crowd of people in order to reach the inside of the car. Such a rule would make the question of negligence depend upon the brute strength of the passenger."

The testimony introduced by the plaintiff clearly required the court to submit to the jury whether there was available or unoccupied space in the body of the car, and whether it was reasonably practicable for the plaintiff to enter the car. The plaintiff himself testified that when he stepped on the platform he could not get quite to the door, that the platform was crowded and the car was full, that the inside of the car around the rear door was so crowded that it was impossible to see forward to the front of the car, and that he then took a position on the platform between the controller and the side of the car. Mr. Benn, a witness for the plaintiff, testified that there was a congestion at the rear door, and that "I believe you could have crowded in if you had felt so inclined; if you had felt like it you might have pushed your way in." Mr. Kent, another witness for the plaintiff, testified that there were eight people on the rear platform, that the inside of the car was filled, that the conductor worked himself sideways into the car, and that a passenger could possibly have forced his way in.

This and other testimony in the case was amply sufficient to warrant the learned trial judge in submitting to the jury the question whether it was reasonably practicable for the plaintiff to enter the body of the car, and whether he was justified, owing to the crowded condition of the car, in remaining on the platform. The plaintiff's negligence depended upon the answer to this question, and the jury have, under sufficient evidence, determined it in his favor.

Judgment affirmed.