Hillsborough,
March 2, 1926.

### EDWIN TULLGREN, *Adm'r, v.* AMOSKEAG MANUFACTURING COMPANY.

### EDWIN TULLGREN *v.* SAME.

The fact that a corporation made a practice of carrying home employees taken sick while at work creates no duty to render such service in the absence of an agreement making it a term of the contract of employment. And if there were such an agreement, the sick employee would not be engaged in his employment while being so transported, and would not be a fellow servant of the driver of the vehicle.

One performing a gratuitous service for another is responsible for the exercise of due care in its performance.

The responsibility for the exercise of due care in transporting to his home a sick employee is not discharged by merely furnishing a suitable vehicle and a competent driver. The rule of *respondeat superior* applies, although the service is gratuitous.

A corporation having undertaken to transport a sick employee to her home, it is a question for the jury whether the driver of the automobile, on finding that the road for a considerable distance from her home was covered with water and apparently impassable, used reasonable care in stopping the car and not rendering her other assistance.

When there is a natural causal connection between the defendant's negligence and the plaintiff's injury a finding that the injury was so caused is not rendered improper by evidence of another way in which the injury may have been caused, if it is not conceded or conclusively proved that it was so caused.

In order to charge a defendant with the responsibility of anticipating injury as the result of his action or non-action, it is not necessary that the chances in favor of the happening exceed those against it. The test is not of the balance of probabilities, but of the existence of some probability of injury, of sufficient moment to induce action to avoid it by a reasonably prudent man.

A husband has no right of action for the death of his wife through the negligence of another.

Actions, for negligence, one for causing the death of the plaintiff's intestate, and the other for damages on that account claimed by the intestate's widower. Trial by jury. The decedent became so sick while at work at the defendant's factory that the overseer had her sent home in an automobile kept and used by the defendant. When about 700 feet from her home, the driver left her on the road where there was water over it, and she went by foot the rest of the way. Soon after reaching home she died. Transferred by *Burque*, J., on exceptions by the plaintiffs to the granting of motions for directed verdicts for the defendant, and on the latter's exceptions to the admission of evidence.

*Thorp & Branch* (*Mr. Branch* orally), for the plaintiffs.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

Allen, J. It was the defendant's custom to carry home employees taken sick while at work, but no claim is understood to be made that the custom showed any agreement for its observance so as to make it a term of the contract of employment, the validity of which made it a duty of the defendant to render the service. Without such duty it could in no event be maintained that the employee so served and the driver of the employer's conveyance are fellow servants. And even if the duty thus exists, it would seem ineffective to produce such relationship. While cases hold that when the employer by the contract of employment furnishes transportation to the employee in going to and from and about his work, the latter and the driver of the conveyance are fellow servants, it is on the theory that while so transported the employee is giving attendance to his duty and engaged in an incident of his employment. *Kilduff* v. *Railway*, 195 Mass. 307, and cases cited; *Dayton Coal &c. Co.* v. *Dodd*, 188 Fed. 597, and cases cited. But one too sick to work cannot be said to be on duty, and when thus affected one is outside the scope of employment. If there is a duty to carry a sick employee home or render him other relief, the employee does not continue at work or in employment while the service is furnished, but the performance of the duty is part of the compensation or benefit due him for his work under the terms of his engagement. The right to be taken home or to some other suitable place is a consideration for, but not a part of, the employment. *O'Bierne* v. *Stafford*, 87 Conn. 354; *Dickinson* v. *Railway*, 177 Mass. 365; *Indianapolis &c.*

*Company* v. *Romans*, 40 Ind. A. 184; *Elmer* v. *Pittsburg Rys. Co.*, 251 Pa. 505; *Enos* v. *Rhode Island &c. Co.* 28 R. I. 291. In being taken to her home the decedent and the driver of the car were not fellow servants.

Assuming the undertaking was gratuitous and admitting the duty to use due care in such an undertaking, the defendant urges that in view of its gratuitous character the undertaking required care only in furnishing a suitable vehicle and competent driver.

The advent of the automobile has resulted in frequent situations where an invited guest is injured by the negligence of the owner's servant as the driver of the automobile. While there is some conflict, the weight of authority enforces the doctrine of holding the owner responsible for such negligence. No case in this state has heretofore presented the situation, but it is said in *Dearborn* v. *Fuller*, 79 N. H. 217, 219: "If . . . a finding of authority conferred [for the driver to give the guest a free ride] could reasonably have been made, the case would have been for the jury." Does this dictum state the law?

The duty to use care in rendering a service arises not from a right to receive the service, but from the relation between the parties which the service makes. The relation being established, the legal incidents pertaining to it follow. The right to receive care being premised, it is not ordinarily lost by delegation to others of the performance of the service, and the relation between the parties is unaffected by the assignment of the undertaking to one's servant. The maxim of *respondeat superior* rests on this basis. "The plaintiff in the suit against the master must establish a relation of the master to him. He cannot do this by showing the master's presence, for he was absent; nor can it be proved by authority conferred, for none was given. It can only be shown by resorting to the legal fiction that the act of the servant was that of the master." *McNamara* v. *Chapman*, 81 N. H. 169, 171, 172. If the defendant had been a real person and had personally driven the car, liability for looking after the decedent's safety would not be questioned. Under the rule of *respondeat superior* the defendant is no less liable because he has a servant take his place in carrying out his undertaking.

But it is argued that although this is the general principle, yet it is subject to qualification, because no reasonable man in rendering a gratuitous service would assume responsibility for the negligence of his servant assigned to execute the service. The logical fallacy of the argument lies in failing to distinguish between what is volun-

tarily assumed and its legal consequences. While one may have choice of action, action taken is subject to the law governing it. When it is said that one who enters upon an undertaking assumes the legal duties relating to it, what is really meant is that the law imposes the duties on him. A contract is not a law, nor does it make law. "It is the agreement plus the law that makes the ordinary contract an enforceable obligation." *Stanley* v. *Kimball*, 80 N. H. 431, 434. The conception that duties are imposed rather than assumed does not mean that the conditions of liability may not ordinarily be regulated by the terms of the contract. Such regulations are valid so far as the law enforces them, as it ordinarily does. But the law governing the relation which arises from the execution of the contract is not to be altered by the parties. *Kenney* v. *Len,* 81 N. H. 427, 438. Liability for negligence is imposed by law, regardless of and despite the terms of the contract and the understanding of the parties. Even if it were assumed that the parties did not contemplate that the defendant should be liable for the driver's negligence, it would not affect the law making it so. The duty to use due care obtains whether one acts by himself or by another. To hold that in the case of gratuitous service it is limited to only what he does by himself would seem an anomalous exception not based on principle.

Nor is argument for abridgment of liability supported on grounds of policy and expediency.

To say that one who renders a gratuitous service should assume responsibility only in making proper arrangements, but not in the actual performance of the service except in so far as he acts in person, because no reasonable man would assume such an undertaking on any other basis, seems a defective argument to show the expediency of such a rule, in two respects. It is not a matter of common knowledge that the ordinary man would so limit his action in all cases; and as a matter of "fundamental justice and reasonableness" (*Cavanaugh* v. *Railroad*, 76 N. H. 68, 72; *Stanley* v. *Kimball*, 80 N. H. 431, 435), the reason, if confirmed in fact, seems insufficient. While the average man may not purposely incur unnecessary liability, yet he does incur the liability incident to his conduct and actions. A motive to save or help others may be as urgent as one to benefit himself, and the legal consequences of his proposed action under either situation may or may not be sufficient to deter him.

Differences in the legal standard of care are not called for by differences in the occasion for the creation of the relation, nor are

differences in the application of the rule making the master responsible for his servant's defaults dependent on the facts leading to the relation, with the single exception of cases of common employment. Reasonable justice in these respects is better attained by uniformity of principle than by distinctions. Inequality of circumstance is better dealt with as matter of fact than by legal rules.

The present case, where the decedent appears to have accepted the invitation with some reluctance after being urged, where her condition naturally invoked help, where the object of the journey was serious and important, and where the defendant made it its business to see that she was given aid, as compared with a case where the service is due as a legal obligation, well illustrates the reasonableness of a common measure of liability. If men in general would use less care in one situation than in the other, it is a question of fact for the jury. It cannot be said to be common knowledge that they would.

The service being assumed, the plaintiff was entitled to receive due care in being taken home, not only in means but in manner as well. It was important that she should be taken home in safety, and care in her travel included the conduct of the travel as well as the arrangements for it. Responsibility for actual performance of the service was as much called for as responsibility for its preparation. The duty of preparation, in furnishing a suitable vehicle and competent driver, may or may not be performed by servants. The duty of execution, in furnishing safe conduct, likewise may or may not be performed by servants. Responsibility for care in the observance of the duties is called for as to each. The defendant's contention amounts to a proposal to apply the fellow servant doctrine to gratuitous undertakings. The doctrine has no such intrinsic merit as to warrant it. The demand for responsibility in relations with others for the proper conduct of one's undertakings invites no such narrowed scope. Both reason and justice lead to the conclusion that the master in rendering a gratuitous service to a third person is liable for the negligence of his servant in performing the service.

Even in the absence of a right by virtue of her employment to be taken to some suitable place, the decedent was more than a licensee. She was in the car by invitation rather than permission. And even as to licensees there is a duty "to give reasonable information as to existing conditions that are not open to observation, and to otherwise refrain from negligent conduct." *Locke* v. *Payne*, 81

N. H. 266, 267. See also *Hobbs* v. *Company*, 75 N. H. 73, and *Piper* v. *Railroad*, 75 N. H. 228. In none of these cases was any distinction made between negligence of the owner and of his servants.

Cases holding an employer not responsible for the negligence of a doctor furnished by him if due care in engaging a competent doctor is used are readily to be distinguished, as a doctor is not the employer's agent or servant. He is not under direction or control in the manner he does his work, but is his own master. Conversely, as suggested in *Burnham* v. *Stillings*, 76 N. H. 123, 125, the doctor, unless he should know of them, is not liable for faults in the equipment and facilities furnished by the employer. In the free loan of property, there is at least a duty to disclose defects the owner knows about. *Gagnon* v. *Dana*, 69 N. H. 265. But where there is retention of control, the duty is broader; and requires, in the case of property, that due care shall be used to have it safe, and in the case of a servant, that due care shall be used by him.

There remains to be considered the sufficiency of the evidence to show that the driver was negligent, and that, if he was, his negligence bore causal relation to the decedent's death. If the driver was negligent, it was in leaving the decedent to go home unattended. It may perhaps be rightly claimed that he was justified in driving the car no farther than he did. The road was covered with water, and while there was evidence of its passable condition, the evidence does not show that he knew it. The situation did not readily disclose that a safe passage through the water obtained. But if the water made an apparent barrier to travel by automobile, the duty to use care in getting the decedent to some suitable place was not thereby released. The driver had a sick woman on his hands, and the defendant's undertaking remained unfinished. The undertaking was to give her reasonable attention and assistance to enable her to reach her home in safety. It was for the jury to say whether the decedent discharged further prosecution of the undertaking when the travel by automobile ended, and if not, whether care was then exercised.

The contention that there was no evidence of causal connection between the alleged negligence and the decedent's death requires preliminary consideration of the exception to the medical testimony. Certain hypothetical questions were asked of medical experts, who testified in answer that in their opinion the decedent died of heart trouble caused by overexertion. The questions assumed no facts of which evidence was lacking, but the objection is made that any

positive conclusion from them was necessarily conjectural, and argument is made that because the symptoms of the decedent's sickness did not disclose the cause of it, her death would as probably as not have occurred when and as it did regardless of the alleged negligence as a contributing cause. In other words, it is claimed the evidence was as consistent to show the fatality of her sickness without the additional effect of the negligence as with it, and hence only showed that "her time to die had come."

If it is a requisite of causal relation "that the damage would not have occurred just the same, if defendant's tort had not been committed" (XXV Harv. L. Rev. 314, n.), the evidence here does not necessarily invoke its application. Proof that the decedent had a fatal illness was not conclusive, while the testimony of the experts had some tendency to prove that overexertion by the decedent in her condition as disclosed was likely to cause death. There being evidence of the defendant's negligence as the cause of the over-exertion and of the overexertion as the cause of death, and no other cause of her death being conceded or conclusively proved, it was for the jury to pass upon it, and the evidence excepted to was properly received. "The rule of *Deschenes* v. *Railroad*, 69 N. H. 285, that the jury cannot be permitted to determine by guess or conjecture between two equally probable causes of the injury, for one only of which the defendant is responsible, has no application unless the existence of a sufficient cause or causes, aside from the negligence charged, is conceded or conclusively proved." *Boucher* v. *Larochelle*, 74 N. H. 433, 434. See also *Castonia* v. *Railroad*, 78 N. H. 348.

There was evidence that death was caused by overexertion rather than anything else, because the evidence of overexertion was sufficient, and if there was sufficient evidence of any other cause, "the case is not one of a choice between two or more probable causes conceded to exist, but involves merely the power of the jury to determine as matter of fact the non-existence of the causes which the defendant claimed, if existent, would render the cause of death doubtful." *Boucher* v. *Larochelle, supra,* 434, 435.

The probable duration of the decedent's life but for the negligence would be a consideration in connection with damages if the defendant's liability for her death should be found. If her sickness was fatal, and the defendant's negligence hastened her end, it would affect the amount of a verdict for the plaintiff but not the right to it. The defendant's right to a verdict does not follow merely because its negligence may have been ineffective in consequences,

but so far as consequences capable of inference from the evidence are found, it is liable.

The husband's action cannot be maintained. At common law "the death of a human being cannot be complained of as an injury." *Baker* v. *Bolton*, 1 Camp. 493. The rule has been adopted here in a suit brought by the widow of the person killed (*Wyatt* v. *Williams*, 43 N. H. 102) and the reasoning is equally applicable where the plaintiff is a widower. The legislation providing for survival of actions and enacted since the decision in *Wyatt* v. *Williams*, has not affected its continuing authority. *Chaloux* v. *Company*, 75 N. H. 281. No claim is made for the short time between the alleged negligence and the decedent's death.

*New trial of first action. Judgment for defendant in second.*

PEASLEE, C. J., and BRANCH, J., did not sit: the others concurred.

ON REHEARING. After the foregoing opinion was filed, the defendant moved for a rehearing upon the question of its duty of anticipation.

*Warren, Howe & Wilson*, for the defendant.

*Thorp & Branch*, for the plaintiff, furnished no brief.

ALLEN, J. The defendant urges that in leaving the intestate to go home unaided it had no notice, or reason to anticipate, that harm would be done. It claims that its only notice was of a sick headache, which indicated no need of aid.

If judicial notice may not be taken of the fact that a sick headache is not an original source of trouble but derivative from other trouble, it may at least be found that it would inform ordinary men as a symptom of some trouble which might be so serious as to make walking unaided unsafe. The headache was severe enough to induce the foreman to have the intestate taken home, and when she objected, he insisted on his opinion that she had better go. On the way she was so sick as to require the driver to stop in order to obtain relief. There was accordingly notice of an abnormal condition, although not of its nature and character. Something was the matter with her, which might or might not be serious, and which might or might not make her travel unaided unsafe. Knowledge to that extent might be charged to the defendant. Its ignorance of the nature of

her trouble was some notice that it might be serious and that leaving her to go home unaided might result in injury. Some probability of such result might be found.

". . . 'The question is not whether the damage was foreseen or foreseeable, but whether it in fact resulted as a direct consequence of the defendants' act.' . . . Upon the question whether the defendant has been guilty of negligence, the rule of reasonable anticipation applies . . . But when his guilt has been established, the rule has no application upon the issue of damages." *Bowley* v. *Duca*, 80 N. H. 548, 552.

For a person to be careless it is not necessary that damage as a more rather than less probable result should be anticipated. "As a form and expression of due care, anticipation is a precautionary consideration of what may happen in a situation for which the party is under responsibility. . . . Anticipation is not confined to expectation." *Kenney* v. *Len*, 81 N. H. 427, 428. Danger consists in the risk of harm as well as the likelihood of it, and a danger calling for anticipation need not be of more probable occurrence than less. If there is some probability of harm sufficiently serious that ordinary men would take precaution to avoid it, then failure so to do is negligence. That the danger will more probably than otherwise not be encountered on a particular occasion does not dispense with the exercise of care. One who crosses a railroad track may not reasonably anticipate that a train will in fact be met, but by reason of the risk that one may be, he is called upon to do what is reasonably required to find out. In going around a sharp turn on a highway where the view is obstructed, a driver may be careless towards opposite travel in speed or other ways, though the probabilities may be against meeting anyone. If the chance is so great that ordinary men would drive differently, then he is careless not to do so.

One may be careless because he fails to guard against consequences which are probable only under conditions as to the existence or absence of which he is in ignorance. In *Guevin* v. *Railway*, 78 N. H. 289, a husband was allowed to recover for loss of consortium caused by negligent injury to his wife. As to the plaintiff the defendant's negligence was in failing to anticipate, not that his wife was, but that she might be, married.

While "the likelihood or unlikelihood of a future happening is the turning point" as the test of duty to anticipate (*Derosier* v. *Company*, 81 N. H. 451, 463), this does not mean that the chances in favor of the happening must exceed those against it. The test

is not of the balance of probabilities, but of the existence of some probability of sufficient moment to induce action to avoid it on the part of a reasonable mind.  One may be careless in shooting at an object more probably an animal and less probably a human being, if the doubt about it is sufficient to induce the ordinary man to refrain from shooting.

Whether, in the discharge of the undertaking to take the intestate home, ordinary men would see that she was aided in completing her journey under the circumstances, is accordingly an inquiry of fact which the evidence is sufficient to determine affirmatively. If there was likelihood of injury, the duty to use care was not discharged merely because there was a greater unlikelihood of it.

It is true that the intestate voluntarily took the walk unaided. If it was because the driver refused to take her any farther, it would not alter the negligent character of such refusal.  If such conduct on her part could be considered negligent, it would not meet the question of the plaintiff's right to go to the jury on the issue of the defendant's care as well as the intestate's.  It does not appear that she must have gone home "on her own initiative," in the sense that she was not left by the driver's conduct to her own resources. That the driver did so leave her, and that he was negligent in so doing, may be found.

The defendant's undertaking being to help her home, the undertaking was not necessarily accomplished by leaving the intestate at the foot of the stairs at her home rather than at a place of repose in her home.  And if helping her home by conveyance included no incidental aid from the vehicle into her home, her walk on the road might be found a part, if not all, of the overexertion which brought about, with or without other causes, her death.  If the climb upstairs was the only overexertion, it would not be unreasonable to say that it was made so by the walk.

*Former result affirmed.*

PEASLEE, C. J., and BRANCH, J., did not sit: the others concurred.