Clifford GRIGGS, Appellee,

v.

FIRESTONE TIRE AND RUBBER COMPANY, a corporation, Appellant.

No. 74–1606.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1975.

Decided April 8, 1975.

Rehearing Denied April 29, 1975.

William M. Freivogel, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for appellant.

Kenneth L. Dement, Sikeston, Mo., Gary L. Gardner, Louisville, Ky., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY and WEBSTER, Circuit Judges.

MATTHES, Senior Circuit Judge.

On October 2, 1971, plaintiff Clifford Griggs was injured while attaching to a Ford truck a tire mounted on a Firestone multi-piece rim. As plaintiff was securing the wheel to the truck, the tire and rim assembly exploded, resulting in serious and permanent injuries to his face and head. Griggs filed suit against the Ford Motor Company and the Firestone Tire and Rubber Company, but on plaintiff's motion the court subsequently dismissed Ford from the case. The cause was tried before a jury and plaintiff was awarded $250,000 in damages. Defendant Firestone, manufacturer of the rim, has appealed from the judgment entered on the verdict.

The case was submitted to the jury on a negligence theory of liability. The principal issues on this appeal are the questions whether the court correctly instructed the jury on the duty owed by Firestone to plaintiff Griggs and whether plaintiff's evidence made a submissible case. For the reasons set out below, we resolve these issues in favor of the plaintiff and affirm the judgment of the district court.

I

Initially, we review the circumstances of the accident and the proceedings in the district court. The rim assembly involved in this case consisted of three components: the rim itself, a side ring, and a lock ring. The rim was identified from metal stamp impressions thereon as being a Firestone type 20 x 7.5 DA 5° manufactured in 1957. The side ring

and lock ring were riveted together and were identified from impressed metal stamps as being a Firestone type "R" side and lock ring combination generically equivalent to the 20 x 7.33 type R. The side ring was manufactured in 1945. There is no dispute that these components were mismatched and were not intended to form a unit.

The defendant conceded at trial and on appeal that mismatched rim components are capable of being assembled into a single unit and that such a mismatched assembly is potentially very dangerous.

The mismatch of the rim components in this case occurred in May, 1971, when Herman Fugate, the prior owner of the Ford truck involved in this case, traded the vehicle to Presson Ford Sales in part payment on a new purchase. Before making the transaction, Fugate removed the tires and rims from the truck, and replaced them with extra tires and mismatched rim components which he had accumulated. The actual assembling and mounting of the mismatched rims was made by the Drummond Service Station, a local garage.

The rims and tires placed on the Ford truck by Drummond in May remained thereon until Presson sold the truck to plaintiff's employer, Murray Maynard, in September, 1971. Shortly after the purchase one of the tires went flat, and Maynard directed plaintiff, who was employed as a truck and tractor driver, to make the necessary repair. Plaintiff on occasion had fixed flat tires mounted on

wheels with split rims, but he had never repaired tires mounted on a three-piece assembly exactly like the one that injured him. In repairing the deflated tire, plaintiff removed it from the rim, examined the tube, and, failing to discover any puncture, replaced the tube into the tire. He then placed the tire on the rim base and replaced the split rim and ring. Plaintiff then inflated the tire to 80 pounds per square inch and mounted the tire and rim assembly on the axle of the truck. While plaintiff was fastening the lug nuts which secured the tire and rim assembly to the truck, the "tire blowed off," and the unit struck plaintiff in the face and head. He sustained a fractured skull, nose, cheekbones, and other facial injuries. The injuries caused him to be subject to epileptic seizures and he also lost partial vision in one eye.

Mr. Maynard collected the components of the rim shortly after the plaintiff was injured and retained them until they were delivered to plaintiff's attorney. The rim, side ring, and lock ring were exhibits in the case and were examined by the jury.

A principal issue at trial concerned the type of warnings which Firestone in fact conveyed and the type of warnings which would have been practicable for it to convey. Although the evidence was in some respects conflicting, defendant generally showed that it distributed catalogues containing safety information[1] and various other types of safety literature to the immediate distributors of its rims; namely, parts distributors and the

---

1. We quote representative portions from one of Firestone's rim catalogues:

*Important Rim and Wheel*
*Safety Precautions*
NOTICE!

An inflated tire and rim can be very dangerous. Many accidents, some fatal, have resulted from improper handling and operation of truck rims and wheels. . . .
How to Prevent Rim Accidents
During Tire Mounting

.   .   .   .   .

*Use properly matched parts only.* Rim base and rings must be matched according

to manufacturer, size and type. This information is stamped on each Firestone part.

.   .   .

*How to Insure Greater Safety and Service by*
*Properly Matching Side and Lock Rings*
It is important to recognize that the various types of highway rims produced by their manufacturers all differ to some degree in design. This is particularly true of removable rings and, as a result, side and lock rings of different rim types are not interchangeable. Some may appear to be, but they actually do not fit properly on the rim base. Serious accidents to personnel have resulted from the use of mismatched rings.

.   .   .   .   .

manufacturers of vehicles with Firestone rims as original equipment. Plaintiff's evidence suggested that this literature did not trickle down (at least with any great impact) to the various local service stations which dealt in truck rims and repaired truck tires. There was conflicting testimony about whether it would have been practicable and worthwhile to impress a warning directly on the rim components. Plaintiff's witness, O. J. Hahn, an expert in mechanical engineering, thought that a short warning could appear on the components without creating any significant "stress lines" in the product which would render the rim less durable.[2] Firestone representative Walter D. Benjamin testified by deposition that complete assembly instructions could not be impressed on the rim parts. While admitting that it would be practicable to place a short warning on the pieces, he reasoned that such a warning would not mean anything to the ordinary individual.

At the close of plaintiff's evidence and again at the close of all the evidence, Firestone moved for a directed verdict. These motions were denied. In submitting the case to the jury, the court gave the Missouri Approved Instructions[3] for the negligence liability of a manufacturer of dangerous chattels. The jury was instructed that it must find for the plaintiff if:

First, defendant manufactured the rim base and side ring and lock ring, and,

Second, the rim base and side ring and lock ring were susceptible of being mismatched by size and design and were thereby dangerous to persons using them in the manner and for the purpose intended, and,

Third, defendant knew or by using ordinary care could have known of the dangerous condition, and,

Fourth, the plaintiff did not know and by using ordinary care could not have known of the dangerous condition, and,

Fifth, defendant failed to warn plaintiff of such dangerous condition, and,

Sixth, while the rim base and side ring and lock ring were being used in the manner and for the purpose intended, plaintiff was damaged as a direct result of such dangerous condition.

App. 468.

The court further instructed on Firestone's duty as follows:

If the jury believes from the evidence that in the exercise of ordinary care the defendant should have foreseen the probability that because of a mismatch of the rim and lock ring about which you have heard evidence, he would be exposed to hazards of injury resulting from such action, then it was the duty of the defendant Fire-

---

2. Q . . . Dr. Hahn, based upon your examination of this base ring, this Firestone rim here that's been previously identified as Plaintiff's Exhibit No. 7, and based upon your training and experience in the field of mechanical engineering, do you have an opinion as to whether or not the word [sic] "warning—do not assemble without proper instructions" could be placed inside that ring or rim and stamped on there without unreasonably weakening that item?
   A I have an opinion, and it could be put in without weakening this assembly.
   Q Could you freely put any other markings inside this rim within reason designating: "Do not use, only with certain parts"?
   A You could put this in. . . .

Q Dr. Hahn, could you stamp or could it be done to stamp in there: "Use only with 20—2 x 7.25 ring and rim together"?
   A This could easily be stamped in there. There's sufficient room, there's sufficient stampings already existing in there which do not give sufficient information; that the additional stresses which probably could be placed on this particular assembly by stamping it in there would not be any more than already are placed on this rim.

3. The parties did not object to the fact that Missouri instructions were given and do not dispute the applicability of Missouri substantive law.

stone Tire and Rubber Company, either to:

a) Give such probable user adequate warning of the danger arising from the use of mismatched parts, or,

b) In the absence of adequate warning as set out in (a) hereof, to apply such technology as the jury may believe from the evidence was then available to the defendant to so design the rim and lock ring to prevent the mismatch of those parts.

App. 470.

Firestone made only a very narrow objection to these instructions, stating:

The defendant, Your Honor, has objection to make to instruction number—the defendant Firestone objects to the instruction number 2 on the grounds that this instruction by its language of stating that the rim base and side ring and lock ring were susceptible of being mismatched places an unwarranted burden on the defendant and misdirects the jury as to what the law is and directs the jury to believe that they can return a verdict against the defendant Firestone in this case if they find that the rim and lock ring is susceptible of being mismatched and, therefore, amounts to a misdirection to the jury.

App. 421–422.

The jury found for plaintiff and assessed damages at $250,000. Defendant moved for judgment n. o. v. and, in the alternative, for a new trial. These motions were denied and defendant has perfected this appeal. We proceed to analyze defendant's several assignments of error.

## II

■ Some articles supplied for commerce are dangerous by their very nature, without regard to any product defect. A manufacturer or supplier of such inherently dangerous chattels is subject to a legal duty to exercise reasonable care in warning those expected to use the product of the danger presented. Liability is imposed where injury resulting from the use of the product is attributable to a breach of this "duty to warn." *See* Morris v. Shell Oil Co., 467 S.W.2d 39 (Mo.1971); Orr v. Shell Oil Co., 352 Mo. 288, 177 S.W.2d 608 (1944).

■ This rule of law is more precisely formulated in § 388 of the Restatement (Second) of Torts:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Missouri has long associated itself with the Restatement view, and continues to apply § 388 today. *See* Morris v. Shell Oil Co., *supra*; Orr v. Shell Oil Co., *supra*. The Missouri Approved Instructions given in this case embody the Restatement principles.

Defendant, by its very warning literature, implicitly acknowledges that its product is "dangerous for the use for which it is supplied" and that those "for whose use the chattel is supplied" would not realize that dangerous condition. *Cf.* Morris v. Shell Oil Co., *supra*, 467 S.W.2d at 42. However, defendant vigorously contests the proposition that it has failed to exercise reasonable care in warning of that danger. Additionally, defendant contends that, even should it have breached its duty to warn, its negligence could not in any event be a legal cause of plaintiff's injuries.

## A. *Duty to Warn.*

Defendant's phrasing of the duty issue in its brief is an argumentative statement of 34 typewritten lines containing 285 words. Although this statement is not easily parsed, we understand defendant to be raising two essential points: first, that the duty instruction of the court erroneously informed the jury that defendant had a duty to personally seek out plaintiff and warn him of the danger;[4] and, second, that defendant had, by its warning literature, discharged its duty as a matter of law.

With respect to the first contention, defendant presumably makes reference to the fifth element of plaintiff's verdict directing instruction ("Fifth, defendant failed to warn plaintiff of such dangerous condition") and to that part of the duty instruction providing that adequate warning must be given a probable user. Defendant argues that it was thereby placed under an impossible duty to personally seek out everyone who happens to assemble one of its rims and then and there convey a warning of the danger presented.

■ Although the instructions may be regarded as in some limited sense ambiguous, we find defendant's interpretation of the instruction on the duty imposed to be extreme and we believe it unlikely that the instruction was so understood by the jury. Since the proof at trial was addressed to several means of communicating a warning (*e. g.*, warning literature, a warning impressed on the parts themselves), we do not believe there is any real possibility that the jury understood that a personal warning was required.

In any event, in order to preserve this alleged error on appeal, Firestone was required to bring its objection to the attention of the court. Rule 51, Fed.R.

Civ.P. However, as noted earlier, Firestone made only a single, narrow objection to the instructions rendered by the court, and this objection did not bear on the alleged ambiguity now asserted on appeal. Accordingly, we hold that this supposed error has not been preserved for appellate review. *See* Otten v. Stonewall Insurance Co., 511 F.2d 143 (8th Cir. 1975); Manning v. New York Telephone Co., 388 F.2d 910 (2d Cir. 1968); Lowe v. Taylor Steel Products Co., 373 F.2d 65 (8th Cir.), cert. denied, 389 U.S. 858, 88 S.Ct. 85, 19 L.Ed.2d 122 (1967).

■ There is no obstacle, of course, to our review of Firestone's contention that, as a matter of law, it had discharged its duty to warn and that the jury verdict thus cannot stand. Nevertheless, we observe that the review of a trial court's denial of a motion for judgment n. o. v. is severely limited. In Hanson v. Ford Motor Co., 278 F.2d 586, 596 (8th Cir. 1960), Judge Blackmun, now Associate Justice of the Supreme Court, stated that in passing upon the motion for judgment the trial court and this court are

> (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it.

■ We note at the outset that whether a manufacturer or supplier has

---

4. Firestone phrases the issue as follows:
   The Court Nonetheless Instructed The Jury That . . . Defendant Had A Duty To Seek Out Plaintiff On A Farm In East Prairie, Missouri And Individually Warn Him Of The Obvious Consequences Of Mismatching Rim Components In Both Type And Size.

Despite The Fact That Defendant Could Not Physically Comply With Any Such Supposed Duty For Reason That It Would Require Defendant To Follow Its Products To Their Respective Graves And Beyond Their Attempted Resurrection From A Junk Pile . . .

exercised reasonable care in the distribution of an inherently dangerous chattel involves a calculus in which the nature and degree of the danger are significant factors. As noted in the comments to § 388 of the Restatement (Second):

> Since the care which must be taken always increases with the danger involved, it may be reasonable to require those who supply through others chattels which if ignorantly used involve grave risk of serious harm to those who use them \* \* \*, to take precautions to bring the information home to the users of such chattels which it would be unreasonable to demand were the chattels of a less dangerous character.

Restatement (Second) of Torts § 388, comment n at 309 (1965).

■ The Restatement comments go on to indicate that the danger posed by a chattel may be so great as to make it unreasonable for a supplier to entrust conveyance of a warning to a middleman in the chain of distribution. In such circumstances, the supplier may be required, where "practicable and not unduly burdensome," to make the chattel carry its own warning:

> Thus, while it may be proper to permit a supplier to assume that one through whom he supplies a chattel which is only slightly dangerous will communicate the information given him to those who are to use it, unless he knows that the other is careless, it may be improper to permit him to trust the conveyance of the necessary information of the actual character of a highly dangerous article to a third person of whose character he knows nothing. . . . [I]f the danger involved in the ignorant use of a particular chattel is very great, it may be that the supplier does not exercise reasonable care in entrusting the communication of the necessary information

even to a person whom he has good reason to believe to be careful. Many such articles can be made to carry their own message . . . indicating with a substantial sufficiency their dangerous character. Where the danger involved in the ignorant use of their true quality is great and such means of disclosure are practicable and not unduly burdensome, it may well be that the supplier should be required to adopt them.

Restatement (Second) of Torts § 388, comment n at 309–310 (1965).

■ In the instant case we have no difficulty with the proposition that the jury reasonably could have found that defendant had not met its duty to exercise reasonable care. By any standard the danger inhering in defendant's product must be deemed great: there is an obvious potential for severe injury from wholly unanticipated explosion of a wheel assembly under great pressure in close proximity to the repairman. As Firestone acknowledges in its warning literature, the resulting harm may easily be grievous bodily injury or even death. Given this potential for severe injury, we cannot say as a matter of law that defendant discharged its duty through the informational literature which it supplied to the various parts distributors and automobile manufacturers using its rims.[5] To so hold would be to ignore the fact that the jury was not bound to consider such an informational campaign as necessarily equivalent to the exercise of reasonable care. As noted in the Restatement reasonable care may dictate that a warning be impressed directly on the article when (as here) the danger is great and such a warning would not be impracticable or unduly burdensome. Plaintiff presented testimony from which the jury could find that such a warning was practicable and, since Firestone already impresses identification in-

---

5. As noted earlier, although Firestone seemingly did supply warning literature to these immediate distributors of its rims, the jury could have found that this informational campaign did not adequately "trickle down" to the many

local dealers in Firestone products and the area service stations, and that therefore the informational campaign was not an adequate method for warning probable users of the rims.

formation on its rim parts, the jury could obviously find that the impressing of additional warning information was not unduly burdensome. We believe the jury could reasonably have found that ordinary care required that a warning be impressed directly on this dangerous instrumentality.

In closing our discussion of this issue, we observe that the necessity for rim disassembly is not an infrequent occurrence. The record indicates that a rim may last for twenty-six years or more, and that it probably will have to be disassembled at least once a year. In the life of any given rim, therefore, there are numerous occasions when components may be mismatched and a potential "bomb" created. In calculating the warning appropriate to this danger, Firestone *assumed* that most people servicing its rims would realize the dangers presented and possess the requisite aptitude and experience to assemble the rim safely:

> Q. In that vein, Mr. Benjamin [a former Firestone representative], does Firestone assume that the persons who are going to be assembling these rims and using these rims and repairing these rims are going to be aware if there are more than one type of truck rim?
>
> A. Yes.
>
> . . . . .
>
> Q. He must have some basic knowledge, must he not, Mr. Benjamin, in order to even be looking for the possibility that they might be mismatched?
>
> A. Yes.

App. 176–177.

We cannot say as a matter of law that it was reasonable for Firestone to devise its method of warning according to this assumption regarding rim users. Indeed, in view of the inevitability of rim disassembly and the practical fact that, at least in some cases, repair is bound to be undertaken, as here, by those not familiar with the particular dangers of these multi-piece rims, the jury could find that Firestone's assumption was unreasonable and that it had failed its duty of care. It is a well-established principle of the law of negligence that

> [d]anger consists in the risk of harm, as well as the likelihood of it, and a danger calling for anticipation need not be of more probable occurrence than less. If there is some probability of harm sufficiently serious that ordinary men would take precautions to avoid it, then failure so to do is negligence. . . . The test is not of the balance of probabilities, but of the existence of some probability of sufficient moment to induce action to avoid it on the part of a reasonable mind.

Bean v. Ross Mfg. Co., 344 S.W.2d 18, 25 (Mo.1961), quoting Tullgren v. Amoskeag Mfg. Co., 82 N.H. 268, 276, 133 A. 4, 8 (1926). *See* Morris v. Shell Oil Co., *supra*, 467 S.W.2d at 43.

Defendant seeks to avoid the above doctrine by reference to the Missouri case of Morris v. Shell Oil Co., 467 S.W.2d 39 (Mo.1971). In *Morris* a domestic maid suffered contact dermatitis on her hands as a result of using "Cycle Sol 63," a petroleum-based solvent, to remove old wax from a bathroom floor. The maid brought suit against Shell Oil, the manufacturer of the solvent, and against the several companies involved in the chain of product distribution. The jury found Shell liable and awarded plaintiff $6,000 damages. The trial court then sustained Shell's post-trial motion for judgment in accordance with its motion for directed verdict. On appeal the Missouri Supreme Court approved the judgment as to Shell, holding that plaintiff failed to prove whether Shell had given any warning to its immediate distributor.[6]

Defendant would have us read *Morris* as holding that in Missouri a manufacturer or supplier of inherently

---

6. The court noted, however, that "some evidence" on the warning issue was apparently available, and thus, "in the interest of justice," remanded the cause for a new trial. 467 S.W.2d at 43.

dangerous chattels always discharges its duty when it warns its immediate distributor. Since defendant warned its immediate distributors, it argues that it was entitled to judgment n. o. v. We think this contention must fail. We note first that such a rule would be clearly inconsistent with Missouri's endorsement of § 388 of the Restatement, since that section clearly contemplates a variable duty to warn dependent on the nature and degree of the danger. Moreover, we find *Morris* easily distinguishable. Emphasized in *Morris* were the facts that Shell sold the solvent in *carload lots* to its immediate distributor, Independent, and that it was only after the product was beyond Shell's control that it was packaged for individual consumption:

> In cases where the evidence shows that the manufacturer packaged the product in a container received by the consumer, evidence by the consumer that no warning was received on the container may also be evidence that no warning was given. This was not the situation in this case. The product was sold by Shell in carload lots. It was Shell's duty to warn Independent of the dangers involved, with the intention that such warning be given the ultimate consumer. . . . Since there was no evidence that Shell failed to give a warning to Independent, the plaintiff failed to sustain her burden as to Shell.

467 S.W.2d at 42.

Because the solvent was shipped in bulk rather than individual units, it was obviously impossible for Shell to affix a warning to the product which would reach the ultimate consumer. To use the terminology of the Restatement, it was not "practicable" for Shell to make the product carry its own warning message. That task could only be accomplished by the distributor who finally packaged the product for ultimate consumption. In such circumstances, the manufacturer is forced to rely on an intermediate party to apply the actual warning: when the supplier or manufacturer has warned the distributor, he has arguably done all he can do, and his actions may be equivalent to reasonable care. This rationale, however, cannot be applied to the rims manufactured by Firestone. When the product leaves Firestone, it is not impracticable that the product be made to carry a warning. Indeed, if the rims themselves are to carry a warning at all, it is only the manufacturer who can actually impress that warning as the product is being cast. For the foregoing reasons, we reject the view that *Morris* entitles Firestone to judgment as a matter of law.[7]

**B.** *Causation.*

■ Defendant contends that it is entitled to judgment n. o. v. because a jury assertedly could not find that any negligence on its part was a proximate cause of plaintiff's injuries or, alternatively, that as a matter of law the mismatch of the rim components at Drummond's Service Station constituted an independent intervening cause absolving defendant of any liability.

With respect to the proximate cause argument, defendant primarily contends that, even had it impressed a warning on

---

7. We reject also Firestone's contention that plaintiff was not among the "probable users" of its product. The jury could properly find that plaintiff, who had repaired truck tires in the past and was employed in a position (truck and tractor driver) where tire repair was not an unexpected task, was among the group of probable users.

Additionally, we reject Firestone's argument that its duty of care must be defined solely in terms of the prevailing standard of care in the rim-manufacturing industry. The cases cited by defendant are not authority for this proposition, and such a rule would be clearly inconsistent with § 388 of the Restatement. The standard is one of reasonable care (which may or may not be equivalent to industry custom), and an industry thus cannot be allowed to set its own standard of care. *See* Witt v. Chrysler Corp., 15 Mich. App. 576, 167 N.W.2d 100 (1969); W. Prosser, Handbook of The Law of Torts § 33 (4th ed. 1971). "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Texas & P. R. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905 (1903) (Holmes, J.).

the instant rims, the warning would have been obliterated by years of dirt and rust, and thus would not have been conveyed to the plaintiff.

While this argument was, of course, entitled to consideration by the jury, there was evidence from which the jury reasonably could conclude that a warning on these particular rims would have been visible to Griggs.[8] A Firestone analysis indicated that the rim base was in "fair condition" with only light corrosion in certain areas, and the rim parts in this case were still capable of identification through the impressed codes used by Firestone. Additionally, it may have been that the rims were relatively clean, since they had been installed just prior to the trade-in of the vehicle, and the accident occurred only several days after Maynard's purchase. In any event, these rims were viewed by the jury, and it was a jury question whether, given all the circumstances, a warning might have been so printed and situated that it would have been successfully conveyed.

◼ Given the above evidence, it cannot be said that plaintiff failed to create a jury question on the issue of proximate cause. The determination of proximate cause is ordinarily reserved for the jury, and may be shown by circumstantial evidence. Kinealy v. Southwestern Bell Tel. Co., 368 S.W.2d 400, 402 (Mo.1963); Curtis v. Fruin-Colon Contracting Co., 363 Mo. 676, 253 S.W.2d 158, 161 (1952). Moreover, we add that plaintiff does not fail to make a submissible case merely because it is not demonstrated with certainty that an adequate warning would have prevented plaintiff's injuries. Cases involving an alleged failure to warn typically involve the element of forecasting what another's conduct would have been under supposed circumstances; certainty in such a forecast is not required. See Haberly v. Reardon Co., 319 S.W.2d 859, 868–69 (Mo.1958). Cf. Bean v. Ross Mfg. Co., supra, 344 S.W.2d at 25 (although based on New York law, Haberly applied general principles of tort law).

◼ Defendant also argues that legal causation has not been demonstrated in that the mismatch of rim components constitutes an independent intervening cause of plaintiff's injuries. As the trial court properly instructed, whether an intervening act will constitute an independent intervening cause is a question of foreseeability. Willey v. Fryogas Co., 363 Mo. 406, 251 S.W.2d 635 (1952); 1 L. Frumer and M. Friedman, Products Liability § 11.04. Even where the intervening act is the negligence of a third party, the act does not become a superseding cause where "a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted." Restatement (Second) of Torts § 447(b). Moreover, "the law does not require precision in foreseeing the exact hazard or consequence" which in fact transpires; it is sufficient "if what occurred was one of the kind of consequences which might reasonably be foreseen."[9] Comstock v. General Motors Corp., 358 Mich. 163, 99 N.W.2d 627, 636 (1959).

---

**8.** Plaintiff admits that warnings impressed directly on rim components generally would become obscured by dirt, oil and rust. However, we do not understand plaintiff to be admitting that these particular rims were so deteriorated and dirty that the jury could not reasonably have found that an appropriately placed and sized warning would have been visible to Griggs.

Moreover, the fact that rims generally become obscured by road grime does not necessarily detract from the reasonableness of requiring that the rims themselves carry a warning. Since the warning would still be conveyed either when the rims are cleaned or when the grime is not yet such as to obliterate the warning, the grave danger possible might still justify such a warning measure.

**9.** A Missouri Court of Appeals has noted that the outer limits, within which jurors presently are permitted to find foreseeability, are exceedingly broad and flexible in this jurisdiction as in others.

La Plant v. E. I. Du Pont de Nemours and Co., 346 S.W.2d 231, 241 (Mo.App.1961).

In this case the alleged intervening cause—the mismatch of the rim components—was precisely the event against which Firestone warned in its safety literature. It does not matter that the exact manner in which the mismatch occurred was not foreseen. Firestone cannot argue that, as a matter of law, the precise danger which it contemplated was unforeseen. Accordingly, this contention must fail.

## III

We conclude that defendant cannot succeed in its argument that plaintiff failed to make a submissible case. A jury could reasonably have found that Firestone failed to meet its duty of reasonable care, that this failure was a proximate cause of plaintiff's injuries, and that there was no independent intervening cause.

We have examined defendant's other assignments of error and find them, with one exception, to be without merit. The exception involves Firestone's claim that the trial court erred in rejecting evidence on the customs of other rim manufacturers with respect to warning literature. While such evidence is not conclusive, it is relevant in assessing whether defendant exercised reasonable care. *See* Witt v. Chrysler Corp., 15 Mich.App. 576, 167 N.W.2d 100 (1969); W. Prosser, Handbook of The Law of Torts § 33 (4th ed. 1971). However, even if the trial court committed error on this point, defendant cannot claim any significant prejudice. Indeed, defendant acknowledges in its brief that evidence of its conformance with general industry practice was elicited at several points during the trial. This alleged error thus provides no basis for reversal.

The judgment for plaintiff is affirmed.