SABERS, Justice
(concurring in part & dissenting in part).
[¶ 45.] If the trial court had its way, manufacturers of specially designed products could plagiarize or copy another manufacturer’s product without using, testing, designing, instructing on proper use, or warning on improper use. The product could be unworkable, defective, dangerous and could be marketed to South Dakota consumers almost without risk or liability. Thank God the majority opinion puts a stop to that scenario, at least in part.
[¶ 46.] However, the trial court made many other errors, which the majority opinion failed to correct. These errors result from an excessive view of the need for expert testimony and the qualifications therefore, a rush to summary judgment when genuine issues of material fact exist, and excessive emphasis on admissibility over the weight of opinion evidence.
[¶ 47.] As indicated in the majority opinion at paragraph 24, all that must be shown is that expert’s testimony rest upon “good grounds, based on what is known.” See Daubert, 509 U.S. at 590, 113 S.Ct. at 2795 (internal quotations omitted). The rule (Rule 702) clearly “is one of admissibility rather than exclusion.” See supra ¶24 n. 4 (quoting Arcoren, 929 F.2d at 1239). The majority opinion corrects the trial court’s error on this part.
[¶ 48.] However, the majority opinion fails to correct the remainder of the mistakes. Facts supporting reversal of summary judgment on 1) negligence and 2) *412 strict liability (defective design) appear in the majority opinion at ¶ 4 as follows:
After Horacek assembled it, he attempted to use it to see if it would release as the instructions indicated. He noticed that the hook on the sprinter’s belt would rotate downward, thereby “making it virtually impossible for a ‘downward chop’ to release the hook and ring.” Because the downward chop was a means of releasing the sprinter from the pacer’s pull, Horacek decided to bend the hook just enough to make it easier for the ring to release. He bent the hook by using pliers and then tried using the device again. This time, he believed that the hook and ring released appropriately when he applied the downward chop.
Supra ¶ 4. .
[¶ 49.] Because the hook would rotate downward, it was virtually impossible for a downward chop to release the hook and ring. Obviously, it was foreseeable that someone would bend this hook to allow the ring to release, especially in view of the absence of instructions to the contrary and the fact that the downward chop was a purported safety release. In addition, if the hook should not have been bent, it could have been so designed or made with sturdier materials to prevent bending. The majority opinion claims Burley has “not provided an evidentiary basis tending to show that the injury was caused by a defect rather than the alteration of the product.” Supra ¶ 34. However, the fact that the ring could be bent, coupled with the admissions Kytec knew the product would be dangerous if the ring was bent, and did no testing to discover if the ring could be bent, is ample evidence for the jury. “The law recognizes that there can be strict liability of a supplier even though the product is altered or changed if it is foreseeable that the alteration would be made and the change does not unforesee-ably render the product unsafe.” Zacher v. Budd Co., 396 N.W.2d 122, 135 (S.D.1986).
[¶ 50.] Moreover, the Eighth Circuit has held, and this Court has noted in one of our cases, that “where there exists both a design defect and misuse of the product, and it is assumed that each contributes to an accident, the misuse of the product is not an intervening cause if the misuse was foreseeable.” Id. (quoting Griggs v. Firestone Tire & Rubber Co., 513 F.2d 851, 861-62 (8th Cir.) cert. denied, 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975)). Therefore, Kytec cannot escape liability because of the alteration. Kytec admitted the product would be dangerous if the hook was bent, yet did no testing to ensure the hook could not be bent or even warn consumers not to bend the hook. The coach bent the hook so the product would release as the instructions purported it would. Burley suffered a great injury. Kytec should not escape liability because the trial court and the majority opinion believe the jury needs expert testimony to spoon feed it something that can be deduced by the jury itself under the facts presented.
[¶ 51.] These questions present genuine issues of material fact concerning negligence, strict liability (defective design). The trial court is supposed to maintain an even playing field, not one slanted uphill. The trial court is supposed to be the gate keeper, not the goal keeper, nor the score keeper. We should reverse and remand for a fair trial on all issues.
[¶ 52.] It was clear error for the trial court and the majority opinion to affirm the summary judgment on negligence, strict liability (defective design) when the admission of Dr. Berkhout’s expert opinion testimony, the admissions by Kytec and the common sense and knowledge of the jury may be more than enough to support all three causes of action. The majority opinion claims imposing liability “for Ky- *413 tec’s failure to test and inspect the Over-speed Training, where the causal link to the harm to [Burley] is the unknown outcome of testing not done, would be beyond the pale of any ... tort doctrine we can identify.” Supra ¶ 40 (quoting Valentine, 81 Cal.Rptr.2d at 265). However, using summary judgment to dispose of claims that have ample evidence and questions for the jury goes beyond our repeatedly admonished narrow use of summary judgment. See Heib v. Lehrkamp, 2005 SD 98, ¶ 45, 704 N.W.2d 875, 889-90 (Sabers, J., dissenting) (noting summary judgment is an extreme remedy only to be used “when the truth is clear”); Richards v. Lenz, 539 N.W.2d 80, 83 (S.D.1995) (noting that “[s]ummary judgment is a drastic remedy and should not be granted unless the moving party has established a right to a judgment with such clarity as to leave no room for controversy”).
[¶53.] This case is one to be decided by a jury. “It is inappropriate to affirm a trial court’s grant of summary judgment merely because we might believe the non-moving party would not have prevailed at trial.” Heib, 2005 SD 98, ¶ 46, 704 N.W.2d at 891 (Sabers, J., dissenting) (citing Wulf v. Senst, 2003 SD 105, ¶17, 669 N.W.2d 135, 141). Summary judgment is not to be used to control cases whose outcomes are in doubt.
[¶ 54.] Because material issues of genuine fact exist and expert testimony is not necessarily needed to support Burley’s claims, I dissent.